In the Matter of CENTRAL ICE CREAM COMPANY, Debtor.

Appeal of Joan G. RAFEL and George S. Kamberos.

No. 86–2116.

United States Court of Appeals, Seventh Circuit.

March 2, 1988.

Nicholas G. Manos, Epton, Mullin & Druth, Ltd., Chicago, Ill., for Kamberos and Rafel.

Theodore M. Becker, Becker & Tenenbaum, Chicago, Ill., for trustee.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

The prior opinion in this case held that Rafel and Kamberos had prosecuted their appeal in a sanctionable manner—indefinitely delaying filing their opening brief, leading to a summary affirmance, after which they requested lengthy extensions of time to seek rehearing but never did. *In re Central Ice Cream Co.*, 836 F.2d 1068, 1075 (7th Cir.1987). We invited counsel for Central's trustee in bankruptcy to file a statement of the attorneys' fees reasonably incurred in defending the appeal. Since Rafel and Kamberos filed neither a brief nor a petition for rehearing, and the trustee's motion to dismiss the appeal was only 19 pages long, we anticipated that the request would be modest.

The trustee informed the court that counsel had devoted about 500 hours to defending the appeal, time worth more than $64,-000. The trustee declined to estimate how much of this was reasonably incurred, inviting the court to peruse the time sheets and make an independent decision. Since in the first opinion we had chastised the trustee for taking this posture in the district court, 836 F.2d at 1073–74, this strategy was doomed. We invited Rafel and Kamberos to respond to the statement of fees; they filed a motion to strike. Since in still another portion of the first opinion we had held that a request for excessive fees is not a sufficient reason for denying fees altogether (although it might be a reason for imposing sanctions on the requestor), *id.* at 1074, this strategy also was doomed. The response to the motion to strike makes progress, coming closer to a specific request for compensation for specific blocks of time. The motion to strike conceded that about $21,000 of the time was compensable at least in principle (though Rafel and Kamberos questioned whether the hours claimed had been devoted to the case); the response to that motion asks for at least $30,000.

The trustee has submitted detailed billing records. Rafel and Kamberos have not furnished any ground (other than outrage) to doubt that the trustee's lawyers actually devoted the time reflected in these records to the conduct of the appeal. The question remains whether it was *reasonable* to devote so much time to an appeal in which the appellants never filed an opening brief.

This was a "big case". Central's estate is solvent, and the substantive question for decision (if Rafel and Kamberos were entitled to raise it) was whether to accept a payment of $15 million or pursue a riskier claim to $52 million. The time properly devoted to a case rises with the stakes. Lawyers' time affects the probability of a favorable disposition. If the difference between a middling and an all-out defense of an appeal is a reduction from 10% to 5% in the appellant's chance of success, and if it

costs $50,000 extra to mount an all-out defense, it is reasonable to mount that defense if and only if the stakes of the case exceed $1 million. The trustee's request for $64,000 in fees starts from the proposition that such an investment is appropriate to a case with large stakes, in which the pending appeal frustrated the consummation of a $15 million transaction.

But the stakes, although a necessary ingredient of a large bill, are not a sufficient explanation for this bill. Even in a monstrous case, it is imprudent to spend time that does not affect the probability or timing of success. When the appellant has lost in the district court on the ground that its position is frivolous, the appellee must assume that the risk on appeal is small and unlikely to be influenced further even by prodigious efforts. Spending $50,000 to reduce the chance of defeat from 1.0% to 0.9% is worthwhile only if the stakes exceed $50 million. If the law firm believes that payment of its bill is guaranteed, however, it may be tempted to run up fees—stated more neutrally, it may apply less than its usually stringent cost-control methods. The general counsel of a corporate client monitors outside counsel in big-stakes cases; bankruptcy cases like this one, and cases in which the other side will pay the bill, lack such a careful monitor, and the difference shows up in the request for fees. *Kirchoff v. Flynn*, 786 F.2d 320, 324–25 (7th Cir.1986). Our review of the request in this case suggests that the trustee's lawyers exercised neither the restraint that a cost-conscious monitor would induce nor the billing judgment that influences any submission to a paying client.

For example, the trustee asks for $9,564, representing 73 hours of attorneys' time, to prepare its motion to dismiss the appeal. This 19–page document was based on a similar document employed in the district court to contend that the appeal from the bankruptcy court to the district court should be dismissed on the ground that Rafel and Kamberos lacked standing. The district court agreed. Since the trustee had done the principal work in the district court—since, indeed, the trustee maintained that the claim of standing was friv-olous—we doubt that it was necessary to invest four hours per page to produce a duplicative motion.

Four hours per page is an understatement, however. The trustee also wants $18,244, representing 139 hours of legal time, for "preparation for defense of shareholders' appeals to Seventh Circuit—substantive matters". This must mean legal research concerning the arguments the trustee anticipated Rafel and Kamberos would raise. Yet these must be the same legal arguments the trustee researched and briefed in the district court. The trustee did not need the time to respond to novel arguments Rafel and Kamberos presented on appeal. Rafel and Kamberos never presented *any* argument on appeal; they did not file a brief or a petition for rehearing. What subject was being researched, for nearly a month of full-time legal work, in a case said to be frivolous, in which the appellants never filed a brief? The trustee does not inform us.

A lawyer at a firm such as the one the trustee retained will produce 1,800 to 2,000 billable hours in a year. The trustee requests compensation for one quarter of a billable year, three months of full-time legal work, for resisting an appeal in which no opening brief was filed. The appeal was pending (docketing through issuance of mandate) for about seven months. The trustee's request therefore means that during the entire time the appeal was pending, a lawyer was working half time on the subject. *Doing what?* All the appellants filed were motions for extension of time and a motion for leave to file an oversized petition for rehearing (Rafel and Kamberos asked for 50 pages, a ludicrous and self-defeating request).

Much of the time invested in this case is compensable. The trustee thought that delay was injuring the estate, and so he was entitled to resist all of the applications for extensions of time, to file a motion to dismiss (really a *motion for summary affirmance*, as we treated it), to protest the application for more time and more pages to seek rehearing, to engage in settlement negotiations with Rafel and Kamberos, and

to prepare and prosecute the request for attorneys' fees. Counsel had to monitor the case and try to prod the appellants to get a move on. But we cannot escape the impression that wheels spun to no good end. The case lacked a general counsel, and it shows. Neither the appellants nor the estate should have to support inefficient litigation.

An award of attorneys' fees under Fed. R.App.P. 38 should be fully compensatory. In most activities, a person bears the costs of his decisions. In the judicial system, one party's decisions cause the opponent to incur costs and consume judicial time as well. Most legal systems shift the costs at the end so that the winner—the person in the right, who ought to have been left in peace —is not the worse for the litigation, and the person who caused the costs to be incurred bears them. Fee-shifting, when authorized under an exception to the American Rule, should achieve the same end. But the only fees that should be shifted are those the losing party foisted on the winner. Expenses the winning party incurred unnecessarily or unreasonably may not be shifted, else we induce the winners to run up bills on the losers' tabs.

■ It is rarely possible to determine how much time would have been needed, had the winner run a tight ship. We are inclined to resolve doubts in favor of the party in the right, the one entitled to be made whole. Nonetheless, no more than a third of the time invested in this case was necessarily or prudently incurred to respond to what Rafel and Kamberos did to prosecute this appeal—next to nothing. We therefore award the trustee $20,000 under Fed.R.App.P. 38. The bankruptcy court should not entertain a petition for the residue.