**FMC CORPORATION,**
Plaintiff–Appellee,
Cross–Appellant,

v.

**Victoria VARONOS,**
Defendant–Appellant,
Cross–Appellee,

v.

**CONTINENTAL ILLINOIS NATIONAL BANK, Garnishee–Appellee.**

Nos. 89–1217, 89–1325.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1989.

Decided Jan. 11, 1990.

James J. Stamos, Joseph A. Cari, Jr., Barbara J. Anderson, Steven J. Thompson, J. Timothy Eaton (argued), Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for FMC Corp. and Continental Illinois Nat. Bank and Trust Co. of Chicago.

Joseph A. Namikas, Robert A. Leier (argued), Chicago, Ill., for Victoria Varonos.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, FMC Corporation, ("FMC") brought this diversity and RICO action against Victoria Varonos. FMC is a Delaware corporation with its principal place of business in Chicago, Illinois. Varonos is a citizen and resident of Greece. The district court entered a default judgment against Varonos after she failed to answer FMC's second amended complaint. On appeal, Varonos renews her arguments that the district court lacked personal jurisdiction and that the district court abused its discretion in denying her motion to dismiss on forum non conveniens grounds. FMC cross-appeals from the denial of its petition for attorneys' fees. For the reasons set forth below, we affirm in part and reverse and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

FMC International, A.G., a corporation organized under the laws of Switzerland, is a wholly-owned subsidiary of FMC. From January 1977 to August 1987, Varonos was office manager for FMC International's Athens regional office in Greece. Her duties as office manager included telexing FMC's Chicago office each month to request cash transfers for estimated operating expenses for both the Athens office and related regional offices. FMC would then wire funds from Chicago to accounts in Athens. These funds would be converted into drachmas and then deposited into two drachma accounts located in Athens. Varonos was also responsible for ordering services and supplies for the Athens office. She informed FMC's Chicago office of the Athens office's monthly expenditures. She made many of these communications concerning monthly expenditures by telecopier during and after September 1986. Varonos also exercised her authority to co-sign

checks drawn on the Athens drachma accounts to cover office expenses.

FMC's five-count second amended complaint alleges grounds for prejudgment attachment of Varonos's personal bank account, RICO violations, fraud and deceit, conspiracy to defraud, and breach of fiduciary duty.[1]

Because Varonos defaulted on FMC's second amended complaint, we take the factual allegations in that complaint relating to liability as true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir.1983). The complaint alleges that from March 1985 to July 1987, Varonos engaged in a scheme to defraud FMC of thousands of dollars by submitting to FMC for payment fraudulent invoices for services that were never performed. To carry out this scheme, Varonos telexed requests for reimbursements for operating expenses, which included monies to cover the fraudulent invoices that she had prepared or procured. Varonos also telecopied monthly expenditure reports that listed fraudulent invoices as "expenses." In addition, she signed and cosigned checks drawn on the Athens drachma bank accounts to cover the fraudulent invoices for services. FMC was thus induced to transfer funds from Illinois to Greece that covered the fraudulent as well as the legitimate expenses that Varonos was reporting. Varonos and her co-conspirators cashed the checks drawn to pay for the fraudulent invoices and split the proceeds. FMC claimed that as a result of this scheme it suffered $55,980.00 in actual damages.

1. FMC's first amended complaint contained in addition to the counts in its second amended complaint, a count for conversion which the district court dismissed. When FMC filed its second amended complaint to cure various pleading defects, it did not include the conversion count.

2. Although FMC states that judgment was entered against her on January 5, 1989, and Varonos states that judgment was entered on December 30, 1988, the record shows that judgment was entered on January 3, 1989.

3. The district court found that FMC had established it suffered $53,511.49 in actual damages. This amount was then trebled pursuant to 18

Varonos failed to answer FMC's second amended complaint and on December 14, 1988, the district court found her in default. The district court entered final judgment against Varonos on January 3, 1989,[2] in the amount of $160,535.49[3] and released funds in an account Varonos held in Continental Illinois Bank.[4] On January 10, 1989, the district court denied FMC's petition for attorneys' fees and costs, allowing only statutory filing and service of process fees. Varonos filed a timely notice of appeal from the final judgment and FMC filed a timely cross-appeal from the denial of its petition for fees and costs. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. *Personal Jurisdiction*

#### 1. Illinois Long–Arm Statute

A federal district court in Illinois has personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction. Fed.R.Civ.P. 4(e); *Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987). The Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 2–209 (1987), enumerates a series of acts that provide bases for jurisdiction over a nonresident defendant. A nonresident defendant may be sued in Illinois if (1) he or she performs one of the enumerated acts in Illinois and (2) the minimum contacts with Illinois that due process requires are present. *Saylor v. Dyniewski*, 836 F.2d 341, 343 (7th Cir. 1988); *Turnock*, 816 F.2d at 334. We consider the two requirements separately.[5]

U.S.C. § 1964(c), which allows for triple damages for RICO violations.

4. This was a personal account held by Varonos. Judge Nicholas Bua, the district court judge to whom this case was originally assigned, had awarded an *ex parte* attachment of Varonos's Continental Illinois National Bank account. (Order of November 9, 1987). This account contained $145,689.05.

5. Courts interpreting the Illinois long-arm statute originally viewed it as restating the federal minimum contacts standard. *See, e.g., Nelson v. Miller*, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957) (Section 2–209 reflects "a conscious purpose to assert jurisdiction over nonresident de-

The Illinois long-arm statute provides in relevant part that a nonresident defendant submits to the jurisdiction of Illinois courts by committing a tortious act within the state. Ill.Rev.Stat. ch. 110, § 2–209(a)(2).[6] FMC contends that the Illinois long-arm statute confers jurisdiction over Varonos because Varonos's actions in carrying out her scheme to defraud FMC constitute "[t]he commission of a tortious act" in Illinois within the meaning of section 2–209. Specifically, FMC claims that the telexes and telecopied monthly reports of expenditures sent by Varonos included material misrepresentations of the amounts required to cover the legitimate expenses of the Athens regional office. FMC argues that Varonos perpetrated a fraud on FMC in Illinois by sending these communications, which she knew contained material misrepresentations, and that FMC was thus induced, to its detriment, to transfer funds to Greece.

Varonos asserts that any tortious acts she may have committed were not committed within Illinois. She claims that the fraudulent invoices, not the communications requesting the transfer of funds, contain the misrepresentations. Varonos argues further that even if FMC relied on her communications to transfer funds from Illinois to Greece, neither she nor her co-conspirators converted the funds because FMC made these transfers to other of its own accounts in Greece. Finally, Varonos contends that even if the telexes and transfers were in furtherance of the scheme to defraud, mere economic loss in Illinois resulting from acts outside of Illinois does not constitute tortious activity in Illinois within the scope of the long-arm statute. We are not persuaded.

Varonos's argument that the misrepresentations were contained in the invoices rather than in the communications that she sent to FMC in Chicago is disingenuous. Although these communications reflected expenditures for some legitimate expenses, they also reflected expenditures for services that the Athens office did not receive. To the extent that the telexes and telecopied reports Varonos sent reflected monies for services never received, the communications clearly contained misrepresentations.

fendants to the extent permitted by the due process clause."). In subsequent decisions, however, courts adopted a new approach requiring separate inquiries into whether section 2–209 confers jurisdiction and whether the exercise of jurisdiction comports with minimum due process standards. *See, e.g., Saylor,* 836 F.2d at 343 ("The Illinois long-arm statute ... has more recently been held to require separate analysis.") (citations omitted); *Cook Assocs., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197, 429 N.E.2d 847, 850, 57 Ill.Dec. 730, 733 (1981) ("[T]he boundaries or limits under our statute are not to be equated with the 'minimum contacts' test under the due process clause."); *Green v. Advance Ross Elecs.,* 86 Ill.2d 431, 436–37, 427 N.E.2d 1203, 1206, 56 Ill.Dec. 657, 660 (1981) (separate analyses under the long-arm statute and the minimum contacts test); *City of East Moline v. Bracke, Hayes & Miller,* 133 Ill.App.3d 136, 139, 478 N.E.2d 637, 640, 88 Ill.Dec. 322, 325 (3d Dist.1985) ("[T]he rule established by *Nelson v. Miller* is no longer the law of Illinois."); *In re Marriage of Highsmith,* 130 Ill. App.3d 725, 727, 474 N.E.2d 915, 916, 86 Ill.Dec. 1, 2 (3d Dist.1985) (separate analyses under long-arm statute and the minimum contacts test), *aff'd* 111 Ill.2d 69, 94 Ill.Dec. 753, 488 N.E.2d 1000 (1986). These cases and others made it clear that "long arm jurisdiction may not be exercised in every situation that the minimum contacts test under the due process clause would permit," *Turnock,* 816 F.2d at 334 (citations omitted).

Effective September 7, 1989, however, Illinois amended its long-arm statute so that the reach of section 2–209 is once again co-extensive with minimum due process requirements. Where prior to this date, section 2–209 provided that "[o]nly causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section," section 2–209 now provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution or by the Constitution of the United States." Act of Aug. 19, 1981, P.A. 86–840, sec. 1, § 2–209(c), 1989 Ill.Legis.Serv. 4069, 4070 (West). Because this change became effective after the present case was filed, we employ the bifurcated analysis.

6. Section 2–209 provides in relevant part:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

. . . .

(2) The commission of a tortious act within this State.

Additionally, Varonos's argument that no conversion occurred is irrelevant to the question of personal jurisdiction in this case. FMC did not include in its second amended complaint any allegations of conversion[7] and does not argue that Varonos is subject to jurisdiction on this ground.

Finally, contrary to Varonos's contention, FMC does not seek to predicate jurisdiction on mere economic loss in Illinois but rather claims that Varonos's tortious activities in communicating with FMC in Chicago in furtherance of her scheme to defraud the company bring her within the scope of section 2–209(a)(2).

Varonos relies on *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 427 N.E.2d 1203, 56 Ill.Dec. 657 (1981), where the Illinois Supreme Court held that a counter-defendant, sued for alleged misappropriations, diversions of corporate assets and breach of fiduciary duties, was not subject to Illinois jurisdiction. The counter-defendant was a Texas resident who had served as an officer and a consultant to a corporation headquartered in Illinois. The dispute involved an employment relationship carried out in Texas and all of the alleged instances of misconduct took place in Texas.

*Green*, however, is easily distinguished from the present case. In *Green*, there was no dispute that the counter-defendant's acts and conduct all occurred in Texas and the counter-plaintiff sought to predicate jurisdiction on the fact that the out-of-state actions resulted in a drain on the corporation's Illinois assets. *Id.* at 435, 427 N.E.2d at 1207, 56 Ill.Dec. at 661. It is true that an effect of Varonos's and her co-conspirators' scheme was to deplete FMC's bank accounts. Unlike the situation in *Green*, however, FMC does not base its claim of jurisdiction on mere economic loss. Rather, as noted above, FMC argues that Varonos is subject to jurisdiction because she committed tortious activities in Illinois, namely sending communications that she knew to contain material misrepresentations to FMC's Chicago office. Varonos's tortious acts incidentally adversely affected FMC's financial interests.[8]

We believe that *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341 (N.D.Ill.1984), relied on by the district court, provides better guidance than does *Green* in this case. The defendants in *Club Assistance*, officers and directors of a California corporation, attempted to conceal their looting and profiteering by intentionally sending less money to the Illinois plaintiff than was due under the contract. The defendants also used the telephone to misrepresent to the plaintiff their corporation's ability to pay its debts. The court held that these actions subjected the defendants to personal jurisdiction under section 2–209 for both tortious interference with a contract and fraud.

The *Club Assistance* court recognized that after *Green*, mere economic loss in Illinois was an insufficient basis upon which to predicate jurisdiction. The court concluded, however, that because the defendants had used the mails and telephone, they were subject to jurisdiction in Illinois. The *Club Assistance* court followed well-established Illinois law in holding that the defendants' use of the mails and telephone subjected them to jurisdiction.[9] We agree

---

7. The district court dismissed FMC's pendent claim for conversion in Count III of FMC's first amended complaint on the ground that conversion of FMC's wire transfer of funds occurred in Greece when Varonos approved the fraudulent checks drawn against the account. (Memorandum Opinion and Order of Oct. 20, 1988).

8. For the same reason, we find Varonos's reliance on *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 489 N.E.2d 1360, 95 Ill. Dec. 496 (1986) also misplaced. The *Sawant* court, citing *Green*, held that economic loss felt in Illinois was not sufficient to confer jurisdiction when all the defendant's actions took place

in New York. *Sawant*, 111 Ill.2d at 312, 489 N.E.2d at 1365, 95 Ill.Dec. at 501.

9. Numerous cases have held that mailing money or messages to Illinois, if accompanied by the defendant's intent to affect Illinois interests, satisfies section 2–209's requirements. *See Club Assistance*, 594 F.Supp. at 347 & n. 9 (citing cases). Similarly, telephone calls between an Illinois plaintiff and a nonresident defendant, if coupled with this intent, also satisfy the long-arm statute. *See id.* at 347 & n. 10 (citing cases).

with the *Club Assistance* court's conclusion that *Green* did not intend to overrule the large number of Illinois cases holding that mailings or telephone calls by a non-resident, when coupled with an intent to affect Illinois interests, are a sufficient basis for jurisdiction.

We can find no reason to distinguish communications to Illinois made through the mails or by telephone from communications to Illinois made by telex or telecopier when determining whether a nonresident defendant is subject to jurisdiction under the long-arm statute. In the present case, Varonos sent telexes and telecopied reports that she knew reflected expenditures for services never received. She made these communications in furtherance of her scheme to defraud an Illinois corporation; in so doing, she clearly intended to affect Illinois interests.[10] We therefore conclude that Varonos is subject to jurisdiction under section 2–209(a)(2) of the long-arm statute for tortious activities committed in Illinois.

## 2. Minimum Contacts

We next examine whether asserting jurisdiction over Varonos meets the requirements of due process.

■ The "constitutional touchstone" in the due process analysis is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citation omitted). Due process requires that the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. at 2183. The minimum contacts requirement is satisfied if there is "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State." *Jacobs/Kahan &*

*Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir. 1984) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) and *Snyder v. Smith*, 736 F.2d 409, 415 (7th Cir.1984)). The notion of "foreseeability" relevant in determining whether minimum contacts exist is not the foreseeability of causing injury in another state but rather the foreseeability that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). We have previously recognized that individuals must have "fair warning" that they may be subject to jurisdiction within a state. *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 572 (7th Cir.1986). The due process clause enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567).

■ Applying these principles, we hold that subjecting Varonos to jurisdiction does not offend due process. As we observed previously, Varonos reached out to FMC in Illinois through telexes and telecopied reports that misrepresented the costs of operating FMC's Athens office. She sent these communications to FMC's Chicago office to effectuate her scheme to defraud the company. Certainly Varonos should have foreseen that she could be required to answer for her actions in Illinois.

Varonos argues that her actions do not meet the purposeful availment criterion of minimum contacts because her employment required her to communicate with FMC's Chicago office. Specifically, she argues that because FMC and FMC International,

---

**10.** The district court held that through her actions, Varonos "engaged in deliberate and ongoing fraudulent contacts with Illinois for the purpose of adversely affecting the financial condition of an Illinois corporation." Memorandum Opinion and Order of Oct. 20, 1988, at 8. In holding that Varonos was subject to jurisdiction, the district court also observed that mail and wire fraud was deemed to have been committed in the forum of destination as well as in the forum where the communication originated. Because this bears on the question of venue rather than of jurisdiction, however, it is not a basis for our holding.

A.G. obligated her to make requests to the Chicago office, her actions were not unilateral or voluntary. Thus, she claims, she cannot be said to have "purposefully availed" herself of conducting activities within Illinois.

FMC correctly observes that although Varonos's position as office manager required her to communicate with FMC in Chicago, sending communications containing misrepresentations, the basis for jurisdiction in this case, was not part of her job description. Thus, FMC argues that to the extent that Varonos communicated with FMC in furtherance of her scheme to defraud the company, her tortious actions were entirely voluntary. In her reply brief, however, Varonos states that she is arguing not that her employment required her to make fraudulent communications with Illinois but that her employment required "the pattern of contacts, the actual communications with Illinois." We find this argument unpersuasive as well.

FMC is not basing its claim for jurisdiction on the fact that Varonos communicated with the Chicago office as required by her employment. Rather, FMC claims that it is Varonos's use of these communications to further her scheme to defraud the company that provides the basis for jurisdiction. We agree with FMC that because Varonos sent telexes and telecopied reports that she knew contained material misrepresentations to FMC in Illinois, she can be said to have purposefully availed herself of conducting activities within Illinois. That her employment required her to communicate with FMC in Chicago does not change this result.

Varonos also argues that she cannot be said to have purposefully availed herself of conducting activities in Illinois because it was FMC's choice to locate its account in Illinois. Varonos relies on *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) for the proposition that in a minimum contacts analysis it is generally not appropri-ate to consider the plaintiff's choice of bank upon which a check is drawn because this is within the drawer's discretion. Varonos contends that since she had no role in determining where FMC would locate its accounts, her contacts with Illinois were entirely fortuitous.

Again, Varonos mischaracterizes the basis of FMC's jurisdictional claim. FMC does not argue that Varonos is subject to jurisdiction in Illinois because it transferred funds from an account it chose to locate in Illinois. As we have repeatedly observed, FMC contends that Illinois has jurisdiction over Varonos because she sent telexes and telecopied reports that she knew contained misrepresentations to FMC in Illinois in furtherance of her scheme to defraud the company. Varonos's reliance on *Helicopteros* is therefore misplaced. Because the account's location is not the basis for jurisdiction, the fact that FMC transferred funds from an account it chose to locate in Illinois does not preclude the conclusion that Varonos purposefully availed herself of conducting activities in Illinois.

We therefore conclude that subjecting Varonos to jurisdiction in Illinois does not offend due process.[11]

### B. *Forum Non Conveniens*

■ We review the district court's denial of Varonos's motion to dismiss based on forum non conveniens under the abuse of discretion standard. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266–67, 70 L.Ed.2d 419 (1981); *Macedo v. Boeing Co.*, 693 F.2d 683, 685 (7th Cir. 1982). In *Piper Aircraft Co.*, the Supreme Court stated, "[W]here the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. at 266.

The district court observed, among other things, that Varonos perpetrated a fraudu-

---

11. Varonos visited Illinois once in 1981 (Def's Br. at 5), but her presence is not urged as significant by FMC.

lent scheme in Illinois on an Illinois corporation, that the multiple acts of mail and wire fraud underlying FMC's RICO claim were committed in Illinois as well as in Greece, and that there was a public policy interest in providing a remedy in this forum.[12] The district court's analysis was sufficient and has additional support.[13] We conclude that the district court did not abuse its discretion in denying Varonos's motion to dismiss on forum non conveniens grounds.

### C. Attorneys' Fees

Successful RICO plaintiffs may recover attorneys' fees. The RICO fee-shifting provision provides, "Any person injured in his business or property by reason of a violation of ... [the RICO statute] may sue therefore ... and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Plaintiffs are awarded fees under the RICO statute in relation only to their successful RICO claims. *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 470 (3d Cir. 1989).

FMC included with its motion for default judgment a request for costs and attorneys' fees. In connection with its request, FMC submitted a month-by-month breakdown of FMC's fee and cost expenditures as well as copies of billing statements. The billing statements, over fifty pages worth, provided a detailed breakdown of the hours and of counsels' activities. The end of the billing statement for each month contained a summary setting forth the initials of those who worked on the case, the number of hours worked up to that point, and the attorneys' hourly rates. FMC also attached affidavits of two FMC attorneys, Barbara Anderson and Bruce Spoon.

Anderson averred that the amounts FMC spent were "necessarily incurred" in obtaining a judgment against Varonos and that the attorneys' fees were charged at "rates comparable to prevailing rates" in Chicago. Spoon attested to the costs and fees that FMC spent before the suit was filed and to the attorneys' fees that FMC spent for counsel in Greece. The district court noted that the $159,271.00 sought by FMC for attorneys' fees and costs was almost three times the actual damage award of $53,511.83. Citing *In re Central Ice Cream Co.,* 841 F.2d 732, 733 (7th Cir.1988), the district court found that the amount was excessive and that FMC did not establish that the expenditures were reasonably incurred. Rather, the district court viewed FMC as asking for reimbursement of all of its fees and costs instead of asking for only justified fees and costs. The district court further stated that it was unreasonable to "expect the court to spend hours reviewing each and every entry on plaintiff's extensive computer-printout billing sheets in order to identify reasonable expenditures of time and money." The district court then denied FMC's petition for fees in its entirety except for FMC's statutory filing fee and the cost of serving process on Varonos in Greece.

■  A reviewing court generally should reverse an award or denial of attorneys' fees only upon a showing of abuse of discretion. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1159 (7th Cir.1989); *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 549 (7th Cir.1986). Our deference to the district court's ruling on a petition for fees "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially

---

12. The district court also noted that it was unlikely that FMC would have the extensive recourse against Varonos if the suit were brought in Greece. Although we agree with Varonos that under *Piper Aircraft Co.,* the possibility of a change in substantive law generally should not receive substantial weight in a forum non conveniens analysis, we do not believe that the district court accorded undue weight to this factor.

13. *Gulf Oil v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) set out guidelines for determining when a suit should be dismissed on grounds of forum non conveniens and the Supreme Court in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) affirmed the district court's use of these guidelines. Both parties cited *Piper Aircraft Co.* in their trial briefs.

**1316**

are factual matters." *Zabkowicz*, 789 F.2d at 549 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). A trial court may abuse its discretion by failing to exercise its discretion. *United States v. Threw*, 861 F.2d 1046, 1049 (7th Cir.1988) (review of challenge to statutorily authorized sentence); *Hernandez v. Cepeda*, 860 F.2d 260, 266 (7th Cir.1988) (review of admission of evidence under Fed.R.Evid.P. 404(b)); *In re Horenstein*, 810 F.2d 73, 75 (6th Cir. 1986) (review of reduction of fee award under Social Security Act). Our review of the record shows that the district court failed to exercise its discretion when it denied all of the attorneys' fees and most of costs requested by FMC under the RICO fee-shifting provision. We conclude that this failure constitutes an abuse of discretion.

■ In finding that the fees and costs requested by FMC were excessive, the district court stated that the amount of FMC's request was almost triple the amount of the actual damage award. The Supreme Court, in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), rejected the view that the rule of proportionality should govern the award of civil rights attorneys' fees under 42 U.S.C. § 1988. Additionally, we question whether this rule applies in the context of awards under the RICO fee-shifting provision, given recent precedent. *See Northeast Women's Center*, 889 F.2d at 474–75 (rule of proportionality does not govern awards under RICO).

We also do not believe that *In re Central Ice Cream Co.*, 841 F.2d 732, 733 (7th Cir.1988), the only case cited in the district court's order, supports the district court's position. In *Central Ice Cream*, the trustee of an estate in bankruptcy stated that counsel had spent about 500 hours, time

worth about $64,000, in defending an appeal in which the appellants never filed an opening brief and in which the motion to dismiss the appeal was only 19 pages long. The trustee declined to tell this court how much of the time was reasonably incurred, instead asking this court to look at the time sheets and to make its own decision. Although we criticized the tactic of submitting time sheets and inviting the court to determine which time was reasonably incurred, 841 F.2d at 733, we did not conclude that this was grounds for complete denial of all fees. In fact, we observed in the same opinion that a request for excessive fees is not a sufficient reason to deny fees altogether, *id.*, and ultimately awarded the trustee $20,000 as reasonable attorneys' fees. *Id.* at 735.

■ The district court stated that it was unreasonable to expect it to wade through FMC's billing sheets to identify which expenditures of time and money were reasonable. A district court may deny a fee request where the claim for fees is not supported by accurate and detailed records. *See Tabcor Sales Clearing, Inc. v. United States*, 723 F.2d 26, 30 (7th Cir.1983); *Vocca v. Playboy Hotel, Inc.*, 686 F.2d 605, 608 (7th Cir.1982). But in the present case, the district court's complaint goes not to the sparseness of the records but rather to their voluminousness. Seventh Circuit precedent does not support a denial of attorneys' fees on the ground that the supporting documentation is too extensive.[14]

We agree with the district court, however, that the party seeking fees should not stack a pile of time sheets on the bench for the district court to analyze. In that situation, it is preferable for the district court to require the submitting party to organize the time material in a meaningful way with a comprehensive summary so that the material is understandable and easily reviewa-

---

14. In earlier *Ice Cream* litigation, we stated that a district court was not required to "wade through the trustee's voluminous time records to rescue the compensable time from the sea of non-compensable hours." *In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987). There, however, the trustee was entitled to recover fees incurred only in responding to one

document and to part of another and the trustee had disregarded the district court's order to segregate time spent on these items from other, clearly non-compensable time. In the present case, FMC is disregarding no court order and has submitted records for what, at least in its view, is compensable time.

ble. If the district court does not receive reasonable help, then we agree that the denial of fees might be appropriate in some circumstances.

We disagree with Varonos's claim that *Brown v. Stackler*, 612 F.2d 1057 (7th Cir.1980), supports the district court's denial of attorneys' fees. In *Brown*, we affirmed a district court's denial of fees under 42 U.S.C. § 1988. We observed that the plaintiffs' section 1983 action "raised an issue which everyone knew would be controlled by the results of litigation pending in other courts." 612 F.2d at 1058. We agreed with the trial court that in these circumstances, the plaintiffs' claim of over 800 billable hours "was so intolerably inflated" that it warranted a complete denial of fees, *id.* at 1059, and concluded that "it was utterly unreasonable to expend that amount of time on a plain and simple case, which would almost automatically be disposed of by the decision in [another case] whose determination was being awaited." *Id.*

Clearly, *Brown* is factually distinguishable from·the present case. Obtaining the default judgment against Varonos is not analogous to waiting for a decision in another case that is expected to control the outcome of pending litigation. As FMC points out, the district court's docket shows that FMC was involved in responding to numerous motions and briefs. FMC also claims that Varonos vigorously resisted the discovery that the parties had agreed to in the joint order.[15] We therefore conclude that the district court abused its discretion in denying all attorneys' fees.

FMC has requested this court to determine a reasonable fee. In this and other circuits, courts of appeals have adjusted the fee award without remanding the case. *See, e.g., Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir.1988) (citing cases). Nevertheless, we are no more able than was the district court to determine from the record what are reasonable attorneys' fees because the record, although quite detailed in other respects, does not

contain, for instance, the names and credentials of those who worked on the case. Additionally, the time is not categorized by types of legal work; for example, there are no distinctions between time spent researching and time spent writing a motion. This type of information is necessary for a court to set attorneys' fees. Lacking this information, we must remand so that FMC can present a proper fees petition with information neatly summarized and analyzed for the district court to use. If the district court does not receive reasonable help in determining a proper fee, disallowing all fees may then be appropriate. Finally, because fees are recoverable under the RICO fee-shifting provision only for successful RICO claims, *Northeast Women's Center*, 889 F.2d at 470, FMC should also segregate its compensable time from noncompensable time.

With respect to costs, each billing statement includes monthly expenditures for copying, messenger service, long distance charges and the like. As with attorneys' fees, however, the RICO fee-shifting provision allows recovery only for costs incurred in connection with successful RICO claims. Because we are unable to determine what portion of the costs fall within this category, it is necessary to remand so that the district court, with help, may make this determination as well.

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's denial of Varonos's motions to dismiss FMC's second amended complaint for lack of personal jurisdiction and for forum non conveniens. Because we find that the district court abused its discretion in denying all attorneys' fees and most costs, we reverse and remand only for a determination of fees and costs in accordance with this opinion. In finding an abuse of discretion, it is not our view that it was only the fault of the district court, for FMC was also at fault. FMC should only be given the chance to organize and simplify

---

**15.** Because the award of fees under federal statutes is governed by federal not state law, it is unnecessary for us to discuss the state cases Varonos cites in her brief.

its presentation so that the district court may, with a reasonable amount of time and effort, come to a conclusion regarding fees and costs. Rule 36 shall not apply.