GLICKSTEIN, Chief Judge,
concurring in part and dissenting in part.
Plaintiff/appellant, Alexander Proudfoot Company World Headquarters, a multinational business consulting firm, employed defendant/appellee, David Baillie. The original employment agreement included a noncompete clause, whereby Baillie agreed that he would not compete with Proudfoot or solicit Proudfoot clients after termination of his employment. The agreement also provided that appellee return any of Proudfoot’s “confidential” documents after termination. On or about December 17, 1988, Baillie alleged that he was terminated by Proudfoot; and the parties subsequently entered into another agreement, whereby they agreed to negotiate terms of a new employment contract.
On or about October 31, 1989, Baillie resigned from Proudfoot and took a position with United Research, a competitor of Proudfoot located in New Jersey. Appellant filed suit in Palm Beach County against appellee, seeking injunctive relief and damages for breach of contract. Appellant alleged that appellee’s employment with United Research constituted a breach of the noncompete clause of his employment agreement, and that an injunction was required to ensure Baillie did not reveal Proudfoot secrets and/or attempt to steal Proudfoot clients. The complaint also alleged alternative grounds for in person-am jurisdiction over appellant, including: that appellee was a resident of Florida, that under the employment agreement ap-pellee agreed to submit to Florida jurisdiction, and that appellee had sufficient minimum contacts with Florida to support jurisdiction under section 48.193, Florida Statutes (Supp.1988).
Appellee filed a motion to dismiss the complaint for lack of in personam jurisdiction. In his motion appellee alleged that he was not or never had been a resident of Florida and that the venue clause in the agreement was insufficient to establish jur *184 isdiction — given his lack of minimum contacts with the state as required under section 48.193.
The trial court ruled that the facts did not support jurisdiction, determining that the contractual clause requiring appellee to deliver all confidential documents “to the company,” did not require that they be returned to Florida. It reasoned that since the contract did not require appellee to perform this task in Florida, appellee’s alleged failure to do so did not constitute the breach of a contract required to be performed in Florida. I agree with the trial court and my colleagues that Hamilton requires affirmance on this issue of section 48.193(l)(g)’s effect.
However, I believe under section 48.-193(l)(a), appellee could expect to be hailed into a Florida court. The language in Hamilton v. Alexander Proudfoot Company World Headquarters, 576 So.2d 1339 (Fla. 4th DCA 1991), on this issue is dicta; accordingly, we are not bound by it in deciding whether there was substantial competent evidence before the trial court to reject jurisdiction under section 48.-193(l)(a), which provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
I perceive a similarity of expectations between this case and Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), precluding dismissal.
Florida’s long-arm statute, as with similar statutes in other states, is designed to protect residents by providing a means and forum for redress against nonresident defendants. The fact that appellee’s Florida contacts may have been related to international business does not change the fact that the nature of his business arose out of his relationship with Proudfoot, a Florida based corporation. While it is true that the employee-employer relationship is different from a relationship between two business entities, one resident and the other nonresident, “when forum contacts are a natural result of a contractual relationship, it indicates purposeful affiliation with the forum through an interstate contractual relationship.” Equifax Services, Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir.1990) (citing Burger King; FMC Corp. v. Varonos, 892 F.2d 1308 (7th Cir.1990); CutCo Indus., Inc. v. Naughton, 806 F.2d 361 (2d Cir. 1986)).
Appellee executed an employment contract with appellant in West Palm Beach, Florida. He kept in constant contact with the main office here by mail, telephone and personal visits. He was paid by Proudfoot from its Florida headquarters and also submitted expense vouchers to the main office here. Proudfoot also maintained the necessary unemployment compensation benefits for appellee. These contacts suggest that appellee was not only conducting business in Florida, but also had substantial activity affecting this state.
The fact that appellee’s business dealings did not involve other Florida residents should be considered irrelevant in light of the fact that his out-of-state business is a direct result of his contact with a resident of this state. His contacts with Florida reinforce the idea that appellee purposefully affiliated himself with Florida and understood that there existed a “reasonable foreseeability of possible litigation [here].” Burger King, 471 U.S. at 482, 105 S.Ct. at 2187.