**In The Matter Of Lois Jeannette PIERCE, Alleged Debtor.**

No. 92–12703.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

March 7, 1994.

Mark A. Warsco, James Young, Fort Wayne, for petitioning creditors.

Bruce Stier, Fort Wayne, for alleged debtor.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Two issues were determinative of the involuntary petition filed against the alleged debtor Lois Pierce. Was one of the petitioners, Orthopaedics Northeast, Inc., a creditor of Mrs. Pierce? If not, did the circumstances surrounding its joinder so taint the original petition that the numerical deficiency resulting from its disqualification as a petitioner could not be cured through the subsequent joinder of an additional creditor? The court determined both of these issues in the debt-or's favor and· dismissed the petition. In doing so, it also awarded Mrs. Pierce attorney fees, pursuant to 11 U.S.C. § 303(i)(1).

This matter is before the court following trial of the issues raised by counsel's application for fees and the petitioners' objections thereto. By his application, counsel seeks an award of fees in excess of $12,000.00, based upon his having devoted more than 120 hours of time to this matter at an hourly rate of $100.00. There is no dispute that counsel's hourly rate is a reasonable one. Instead, the primary focus of the petitioners' objections is that counsel has dedicated an unreasonable amount of time to this matter. The parties have stipulated that, of the time sought, 32.1 hours is properly compensable. The issue before the court concerns the reasonableness of counsel's remaining time .and whether or not it is excessive or otherwise noncompensable.

Pursuant to 11 U.S.C. § 303(i):

(i) If the court dismisses a[n] [involuntary] petition ... other than on consent of all petitioners and the debtor ... the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee[.]

"Whether fees and costs should be awarded is committed to the discretion of the [trial] court." *In re Reid*, 854 F.2d 156, 159 (7th Cir.1988). Such a judgment "is intended to reimburse an alleged debtor for its reasonable expenses in successfully defending an improper involuntary petition." *In re Leach*, 102 B.R. 805, 808 (Bankr.D.Kan.1989). The award should

be based on detailed accounts of services rendered. Although the type of application used for § 330 awards is not requisite, the record submitted in a § 303(i) setting should clearly identify the nature of the work performed, its relevance to the defense to the involuntary petition, and the time expended. *In re Wavelength, Inc.*, 61 B.R. 614, 621 (9th Cir. BAP 1986) (citation omitted).

■ The court's discretion to award a reasonable fee extends to more than just whether or not a fee will be awarded. " '[M]ay' sometimes means 'won't.' " *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir.1980). Thus, the court's discretion encompasses not only whether a fee will be awarded but also "the *quantum* of the fee to be awarded." *Brown,* 612 F.2d at 1059 (award of fees pursuant to 42 U.S.C. § 1988) (emphasis in original). Nonetheless:

> Discretion does not imply that anything goes. Discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles. *Frantz v. U.S. Powerlifting Fed'n.,* 836 F.2d 1063, 1066 (7th Cir. 1987) (citations and internal quotation marks omitted).

In another context, this court has emphasized the burden placed upon a fee applicant and the importance of exercising "billing judgment" in the preparation of its application.

> In the ultimate analysis, an applicant seeking payment of its fees from a bankruptcy court or out of the assets of a bankruptcy estate is expected to provide the court and creditors with the same type of descriptive detail and to exercise the same degree of billing judgment that it would give to its most valued client. *Matter of Hunt's Health Care, Inc.,* 161 B.R. 971, 980 (Bankr.N.D.Ind.1993) (award of fees pursuant to 11 U.S.C. § 330).

The importance of exercising billing judgment is not limited to applicants seeking payment of fees from a bankruptcy estate. Instead, it exists any time an attorney submits a bill, whether that bill is to be paid by its client, a bankruptcy estate, or its adversary. The Supreme Court has emphasized the importance of doing so in considering an award of fees pursuant to 42 U.S.C. § 1988.

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his

fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* are not properly billed to one's *adversary.... Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40 [76 L.Ed.2d 40] (1983) (citations and internal quotation marks omitted) (emphasis in original).

Indeed, Chief Justice Burger's concurring opinion indicates that the burden imposed upon the applicant seeking fees from its adversary is even greater than the billing responsibility imposed upon an attorney seeking payment of its fees from a client. *Hensley,* 461 U.S. at 440–41, 103 S.Ct. at 1943 (Burger, C.J., concurring).

The Seventh Circuit has articulated similar concerns in a variety of fee shifting scenarios. In addressing the ability to award a reasonable attorney fee pursuant to Rule 11 of the Federal Rules of Civil Procedure, it has taken pains to emphasize this fact.

> The reasonableness requirement by its nature hinges on the particular facts and circumstances presented in a given case and looks not only to the hours and billing rate involved in responding to the other party's sanctionable conduct, but also to the appropriateness of the response taken. A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently. *Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988).

The applicant is expected to correlate its effort in responding to a particular claim to the merits of the claim it is opposing. *Dubisky,* 849 F.2d at 1037. Thus, "the injured party has a duty to mitigate costs by not overstaffing, overresearching, or over discovering clearly meritless claims", *White v. General Motors Corp.,* 908 F.2d 675, 684 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991), and it should not "needlessly protract[ ] the litigation." *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1439 (7th Cir.1987).

These same principles have been applied

with equal force when a prevailing defendant seeks attorney fees under section 1988. Like Rule 11, section 1988 provides for an award of 'reasonable' attorney's fees. Implicit in the reasonableness requirement is the duty to mitigate legal fees by promptly, where possible, disposing of baseless claims through summary procedures. *Leffler v. Meer*, 936 F.2d 981, 987 (7th Cir.1991).

A similar obligation has been recognized with regard to fee applications submitted pursuant to § 16 of the Fair Labor Standards Act. *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607–08 (7th Cir.1982). This same duty to mitigate has also been imposed upon an applicant seeking fees pursuant to Rule 38 of the Federal Rules of Appellate Procedure. *Brooks v. Allision Division of General Motors Corp.*, 874 F.2d 489, 490 (7th Cir.1989).

■ As in Rule 11, Appellate Rule 38 and 42 U.S.C. § 1988, the court may only award "a reasonable attorney's fee" under § 303(i)(1)(B). The court concludes that the same duty of mitigation that exists under Rule 11, Appellate Rule 38 and 42 U.S.C. § 1988, is also implicit to an award of fees pursuant to § 303(i)(1).

> [T]he only fees that should be shifted are those the losing party foisted on the winner. Expenses the winning party incurred unnecessarily or unreasonably may not be shifted, else we induce the winners to run up bills on the losers' tabs. *Matter of Central Ice Cream Co.*, 841 F.2d 732, 735 (7th Cir.1988).

Thus, "when a defendant seeks prevailing party attorney's fees[,] the plaintiff should not be penalized for the defendant's failure to mitigate the amount of his attorney's fees." *Leffler*, 936 F.2d at 987.

Whether submitting a bill to a client, seeking attorney fees from a bankruptcy estate, or from one's adversary, an attorney cannot (as so many attorneys unfortunately appear to do) operate upon the principle that because I have "X" hours of time in this case and my standard hourly rate is "Y," the appropriate fee is "X" × "Y." This is only the starting point of the fee process. Having come to this point, counsel must then ask itself the question "Is what I did really worth what I'm asking for and is it appropriate for me to be paid for everything I've done?" In asking this question, counsel must also consider to whom the bill is being submitted. In some instances it may be entirely appropriate to bill one's client for certain labors and yet not appropriate to submit that same bill to one's adversary, because some of what was done is independent from and unrelated to the basis for the award of fees. *See Hensley*, 461 U.S. at 434–36, 103 S.Ct. at 1940–41.

■ The importance of asking (and properly answering) the question cannot be underestimated. "A party seeking attorneys' fees must present a request from which the correct amount may be computed with reasonable dispatch. The failure to do this justifies a rejection of the request." *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987). The applicant cannot safely operate upon the proposition that it can ask for the moon and stars and leave it to the court to determine what, if any, portion of its request might represent a reasonable fee.

> If ... the [c]ourt were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequences of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful, and the District Court responded appropriately in the case at bar [by denying fees entirely]. *Brown*, 612 F.2d at 1059.

Thus, before submitting any request for fees, counsel must be mindful that an otherwise meritorious request may be denied in toto, because the amount sought is excessive or because the applicant failed to mitigate its damages. *Brooks*, 874 F.2d at 490.

■ The court will not, at the present time, take the extreme step of denying an otherwise meritorious request for fees because of counsel's failure to exercise appropriate billing judgment in connection with the request. Although the court is well satisfied that the request before it is severely inflated, it refrains from doing so because the

amount sought does not rise to the level of the outrageous unreasonableness that confronted the courts in *Brown* and *Brooks*. Furthermore, the nature of the application is such that the court can determine with reasonable dispatch the services for which compensation should be awarded beyond those stipulated to by the parties. Nonetheless, because the request has been severely inflated and the burden of proof concerning the proper amount of fees rests with the applicant, any doubts the court may have with regard to the compensability of counsel's time have been resolved against the applicant.

▪▪▪ Although properly detailed, counsel's application is replete with time devoted to things which should not properly be compensated. Counsel seeks attorney fees for services which had nothing to do with the present involuntary petition, such as his review of the court's decision dismissing a prior involuntary petition brought against Mrs. Pierce. The application also seeks to recover attorney fees that the court is satisfied Mrs. Pierce would have had to incur anyway—regarding a sale of real estate—without regard to the pendency of the involuntary petition. Counsel seeks attorney fees for the relatively ministerial task of filing pleadings and other papers with the court. Such time cannot be properly compensated.

Substantial portions of counsel's time were devoted to researching issues which were totally irrelevant to the court's ability to grant relief under § 303 of the Bankruptcy Code—such as whether or not the alleged debtor had made preferential transfers prior to the date of the petition and the issue of champerty and maintenance. Beyond this, a great deal of counsel's time was devoted not to resisting the petition but rather to the effort of obtaining an affirmative recovery of actual and punitive damages from the petitioners pursuant to § 303(i)(2). This effort was totally unsuccessful. Indeed, in denying the request, the court characterized debtor's belief that the petition had a malicious motivation as fantasy. Although the petition was dismissed, the petitioning creditors should not be required to bear the attorney fees associated with the unsuccessful and largely

independent claim debtor advanced pursuant to § 303(i)(2). *See Hensley,* 461 U.S. at 434–36, 103 S.Ct. at 1940–41.

Beyond seeking compensation for services which the court feels should not properly be billed to the petitioning creditors, the application is also deficient in the way in which it has described and identified time counsel devoted to this matter which might otherwise represent compensable services. An example of this problem is counsel's entry for April 12, 1993, which occupies approximately ⅛ of page 5 of counsel's single spaced itemization. Counsel devoted an undifferentiated 7 hours of his time to researching issues associated with the statutory merits of the petition (bona fide dispute), debtor's right to recover under both § 303(i)(1) & (i)(2), champerty and maintenance, and Bankruptcy Rule 9011 to name but a few. While the court might otherwise be inclined to allow attorney fees for some of these services, counsel's itemization and description includes time devoted to matters which, in the court's opinion, clearly are not compensable. Thus, it is impossible to distinguish compensable from noncompensable time and the court cannot allow compensation. *See Cohen & Thiros, P.C. v. Keen Enterprises, Inc.,* 44 B.R. 570, 573 (N.D.Ind.1984) (compensation withheld when lumped with uncompensable activity). The 2½ hour block of time counsel devoted to trial preparation on May 17, the additional 2 hours associated with the preparation of counsel's portion of the pre-trial order and the 2½ hours associated with trial preparation and legal research on May 18 suffer from similar problems.

Counsel also devoted substantial amounts of time to preparing witnesses, exhibits, and arguments for a status conference held on May 3, 1993, under the mistaken impression this conference was going to be an evidentiary hearing. Furthermore, like the entry of April 12, counsel's description of much of what he did suffers from lumping problems and the irrelevant issue of preferential transfers.

Yet another example of billing excess relates to counsel having devoted more than 10 hours of his time to researching and preparing a response (it is more accurately charac-

terized as a brief) to the petitioner's objections to debtor's motion to dismiss. All of this took place at a time when the court had not yet scheduled any proceedings with regard to the debtor's motion or petitioners' objection to it or invited any response from the debtor.

As indicated at the beginning of this decision, only two issues were determinative to the outcome of this case. From a factual standpoint, the circumstances surrounding Orthopaedics Northeast, Inc.'s joinder in the petition were largely undisputed. Furthermore, once these largely undisputed facts were established, the issue of taint and subsequent joinder, as well as the right to recovery pursuant to § 303(i)(1), more or less fell into place. The court is satisfied that a more focused response to the petition would have enabled counsel to obtain precisely the same result for his client with a substantially smaller investment of time and effort. The court is also satisfied that there has been no effort to mitigate damages, in the form of attorney fees, as a result of the involuntary petition brought against Mrs. Pierce.

The parties have stipulated that, out of the more than 120 hours for which counsel seeks compensation, 32.1 hours may properly be compensated as a reasonable fee. Of the remaining time in issue, because of the deficiencies in counsel's application, the failure to mitigate damages by more promptly focusing upon and resolving the issues which were determinative of this proceeding, the inclusion of time in the application devoted to irrelevant and unnecessary issues, as well as the inclusion of time which cannot properly be assessed against the petitioners, the court is satisfied that only the time which it can clearly and readily ascribe to the core of counsel's successful defense to the petition should be compensated.

The court will allow Mrs. Pierce to recover attorney fees for the 2.2 hours of time counsel devoted to the Orthopaedics Northeast issue on January 12, 1993 and the additional 1 hour on that same date spent discussing this issue with Mr. and Mrs. Pierce.

Of the 2 hours of time counsel spent on January 25 preparing his pre-trial statement, the amount in question is excessive. None-theless, because of the necessity and the importance the court ascribes to this particular document, some of counsel's effort should be compensated. The court will allow ½ hour.

On March 19, 1993, counsel spent 3 hours investigating the facts surrounding Orthopaedics Northeast's joinder. The court will allow compensation for this time.

On April 19, 1993, counsel spent 2 hours preparing for and meeting with Mrs. Pierce's former counsel to explore issues relating not only to the Orthopaedics Northeast debt but also other obligations of the alleged debtor and her prior petition for relief under Chapter 13. Insofar as the determinative issues in this particular case are concerned, the time is excessive but otherwise properly spent. The court will allow compensation for ½ hour.

On May 6, 1993, counsel spent 2 hours preparing questions for various witnesses with regard to the Orthopaedics Northeast debt. Much of this time undoubtedly duplicates the 3 hours counsel spent on March 19 devoted to substantially the same issue, as well as the time counsel had previously spent with his client discussing the same thing. To a large extent it would thus appear that these two hours are redundant or duplicative of things which had previously been accomplished. The court will allow ½ hour.

On May 17, 1993, counsel spent .3 hours devoted to preparing witnesses with regard to the Orthopedics Northeast debt in preparation for the upcoming trial. The court will allow compensation for this amount.

Of the 1.7 hours on May 19, 1993 devoted to completing the pre-trial order (counsel had already spent 2 hours devoted to the same thing the day before) the court will allow ½ hour. The remaining time is excessive.

Trial of the issues raised in this matter consumed 6 hours of counsel's time on May 20, 1993. The matter went to trial not only on the question of whether or not the petition would be dismissed but also with regard to the alleged debtor's right to an affirmative recovery under § 303(i)(2). The presentation of the evidence was not completed on

this date and the proceedings were adjourned until May 27 in order to finish up. Although counsel has indicated that one-half of the time spent at trial was devoted to the § 303(i)(2) malicious prosecution issue, the court finds that counsel has underestimated this allocation. The court is satisfied that, after the § 303(i)(2) issues are eliminated from the trial time, a focused presentation would have consumed no more than 25% or 1½ hours of the 6 hours devoted to the trial of this matter on May 20. The court will allow compensation for this proportion and no more.

■ The final item of time that has been objected to is the 2 hours counsel spent on June 3, 1993 preparing the fee application in question. The decisions in *Hunt's Health Care* and in this case indicate that the court expects a great deal from an applicant in connection with the thought and preparation that must go into the submission of a fee request. The court is fully aware that submitting a proper application is not a simple matter. As a result, the court recognizes that it has the discretion to allow compensation, in the form of attorney fees, for the time associated with preparing an application that meets the standards the court expects. In this instance, however, counsel's application did not do so and the court concludes that counsel's efforts should not be compensated.

Of the time in dispute, the court finds that only 10 hours were reasonably devoted to Mrs. Pierce's defense to the involuntary petition brought against her and may properly be recovered from the petitioning creditors pursuant to § 303(i)(1). When added to the 32.1 hours which are not in dispute, the alleged debtor is entitled to recover attorney fees for 42.1 hours of counsel's time at a rate of $100.00 per hour.

An appropriate order will be entered.