**In re LANDMARK DISTRIBUTORS, INC., Alleged Debtor.**

**Bankruptcy No. 94–20456.**

United States Bankruptcy Court, D. New Jersey.

April 2, 1996.

Kaye, Scholer, Fierman, Hays & Handle by Herbert S. Edelman, Jane W. Parver, New York City, for Landmark Distributors, Inc.

Frankel and Abrams by Sandor Frankel, New York City, for Alleged Debtor, Landmark Distributors, Inc.

DeMaria, Ellis, Hunt, Salsberg & Friedman by William J. Hunt, Paul Friedman, Newark, NJ, for Tommy Boy Music, Inc.

Davis, Scott, Weber & Edwards by· Jay Gerber, New York City, for Various Non–Party Warner Entities.

**OPINION**

WILLIAM F. TUOHEY, Bankruptcy Judge.

## I. INTRODUCTION.

The within matter comes before the court pursuant to 11 United States Code Section 330 and Rule 46 of the General Rules of the United States District Court for the District of New Jersey wherein counsel for alleged debtor Landmark Distributors, Inc. ("Landmark") seeks attorneys' fees and costs as a result of the oral opinion of this court rendered on March 24, 1994, dismissing the involuntary petition against Landmark, and the written opinion of this court, *In re Landmark Distributors, Inc.*, 189 B.R. 290 (Bankr.D.N.J.1995) filed on November 16, 1995, wherein judgment was entered awarding Landmark costs, reasonable attorneys fees and damages pursuant to United States Code Section 303(i).[1]

A hearing was held on this matter before the court on January 30, 1996, at which time the court reserved opinion. The issues raised by this matter are core proceedings as defined by Congress in 28 U.S.C. section 157. The within opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## II. FACTS AND PROCEDURAL HISTORY

### A. Underlying Litigation

On January 25, 1994, three creditors[2] filed an involuntary bankruptcy petition against Landmark Distributors, Inc. ("Landmark"). Landmark filed an answer contesting the involuntary complaint on February 18, 1994. Landmark was a corporation engaged in the distribution of records. All Petitioning Cred-

(A) any damages proximately caused by such filing; or
(B) punitive damages.

**2.** The three petitioning creditors who originally filed the bankruptcy matter on January 25, 1994, consisted of Max Entertainment Inc. ("Max"), Select Records ("Select"), and Tommy Boy Music, Inc. ("Tommy Boy"). A fourth creditor, Luke Records ("Luke") joined the original three petitioning creditors on March 9, 1994.

**1.** Section 303(i) of the Bankruptcy Code provides:
If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
(1) against the petitioners and in favor of the debtor for—
(A) costs; or
(B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for—

itors are engaged in the rap and dance music industry.

For four days, commencing March 15, 1994, the bankruptcy court tried the issue of the filing of the involuntary complaint and whether the alleged debtor, Landmark, should be placed in a chapter 7 bankruptcy proceeding (the "March 1994 trial"). At the conclusion of the four day trial, the court issued an oral bench opinion on March 24, 1994, setting forth the court's findings. In summary, the court found that the involuntary petition should be dismissed.

At the conclusion of the March 1994 trial, an appeal to the District Court was taken by the Petitioning Creditors in April 1994 (the "1994 Appeal"). The District Court affirmed the findings of the bankruptcy court.

For a period of 24 days commencing June 7, 1995, and ending August 1, 1995, this Court tried the issue of Landmark's entitlement to an award of damages in the context of a dismissed involuntary proceeding pursuant to 11 U.S.C. § 303(i). During the course of these 24 days of trial, the court heard the testimony of 16 witnesses and reviewed a substantial number of documents placed into evidence. Thereafter, on November 16, 1995, this court issued its written opinion, *In re Landmark Distributors, Inc.*, 189 B.R. 290, wherein the court awarded judgment against the three petitioning creditors. In said opinion, Tommy Boy, Select and Max,

are assessed reasonable costs and attorneys' fees, the amount to be fixed by further hearing and order of this court. Judgment was also entered against petitioning creditors, Tommy Boy and Select, for compensatory damages in the amount of $3.2 million, and punitive damages against Tommy Boy in the amount of $500,000.

## B. Fee Applications

In the within fee applications, pursuant to 11 U.S.C. § 330(a), counsel for Landmark seek the following fees and costs:

| Professional Fees And Expenses: | Amount Sought: | Disbursements: |
| --- | --- | --- |
| Kaye, Scholer | $2,239,321.00 | $147,665.75 |
| Frankel & Abrams [3] | $ 511,056.25 | $ 469.00 |
| Richards & O'Neill [4] | $ 77,921.00 | $ 10,794.25 |
| Tucker, Anthony Inc. | $ 44,500.00 | $ 4,933.70 |
| Richard A. Eisner | $ 29,330.00 | $ 3,510.00 |
| Court Reporting | | $ 30,298.00 |
| Trial Exhibits | | $ 10,649.12 |
| Totals: | $2,902,128.25 | $208,319.82 |

The court will treat each of the above referenced requests for fees and expenses individually.

## 1. Legal Fees and Expenses:

With respect to its application for compensation in the amount of $2,239.321.00, Kaye, Scholer contends that its fees "have been based upon Kaye Scholer's normal hourly rates." [5] (Affidavit of Herbert S. Edelman in

**3.** Frankel and Abrams are long time general litigation counsel for Profile Records, Inc. and its affiliates, including Landmark, and worked during the dismissal and damages phases of the trial as outside litigation counsel with Landmark's bankruptcy counsel, Kaye, Scholer. (Affidavit of Sandor Frankel in Support of an award of Counsel Fees and Costs Pursuant to 11 U.S.C. § 303(i) filed December 20, 1995, at paragraphs 3–11.) Frankel & Abrams played more of a role in the dismissal trial than in the damages trial and conducted several of the depositions related thereto. (Transcription of Exhibit 4 to Affidavit of Sandor Frankel sworn to December 26, 1995—Records of Stuart E. Abrams.) At the damages trial, Kaye, Scholer conducted a substantial part of the discovery and was the lead counsel at trial with the assistance of Frankel & Abrams. (Affidavit of Herbert S. Edelman In Support of an Award of Counsel Fees and Costs pursuant to 11 U.S.C. § 303(i), filed December 20, 1995 at paragraphs 10–12.)

**4.** Richards and O'Neil had served for several years as litigation counsel to Landmark in a

number of lawsuits arising out of its distribution business before the bankruptcy. The Richard and O'Neil firm assisted Kaye, Scholer and Frankel & Abrams in the damage phase of this proceeding. (Affidavit of Fran M. Jacobs in Support of an Award of Counsel Fees and Costs pursuant to 11 U.S.C. § 303(i), filed December 20, 1995, paragraphs 1–3.)

**5.** The rates for the nine Kaye, Scholer partners working on the Landmark matter ranged from $485/hour for Herbert S. Edelman of the bankruptcy department, to $305/hour for a partner in the litigation department. The rates for three "New York counsel" ranged from $340/hour to $295/hour. The rates for 19 associates ranged from $295/hour for a lawyer with approximately 11 years of experience, to $134/hour for first year lawyers. One summer associate worked on the matter at a rate of $120/hour. Four members of the library staff billed from a high of $113/hour to a low of $95/hour. Nine "managing attorney clerks" were billed at a rate of $150/hour to $90/hour. A total of 18 "paralegals" or "para-

Support of an Award of Counsel Fees and Costs, filed December 20, 1995, at para. 2. See Exhibit "A" to the Edelman Affidavit, particularly doc# 1206769.ny/6.1 summarizing the Time Records of Kaye Scholer.) Moreover, Kaye Scholer contends that the nature of the services rendered by it during the course of these proceedings can be categorized as follows:

(i) opposition to the involuntary chapter 7 petition filed by the petitioners against Landmark;

(ii) opposition to the Petitioners' appeal, and requests for stays pending appeal, of this court's order dated March 24, 1994, dismissing the petition (the "Dismissal Order") to the United States District Court for the District of New Jersey and the Court of Appeals for the Third Circuit;

(iii) preparation for and conduct of the trial before this court to adjudicate Landmark's assertion that Petitioners acted in bad faith by filing the petition and to consider Landmark's request for fees, costs, compensatory damages and punitive damages against petitioners pursuant to section 303(i) of the Bankruptcy Code; and

(iv) opposition to Petitioners' motion made in August 1995 to vacate the dismissal order.

(Edelman Affidavit filed December 20, 1995, at para. 4.) In addition, the Supplemental Affidavit of Steven Plotnicki,[6] filed February 29, 1996, makes clear that during the course of these proceedings, Landmark often paid its legal fees and costs to the Kaye, Scholer firm, among others, to the extent of its available cash. When Land-

mark no longer had sufficient cash resources to pay the fees and costs associated with the bad faith and damages phases of this case, Mr. Plotnicki arranged for Profile, a related entity to Landmark, to advance the funds necessary.[7] (Supplemental Affidavit of Steven Plotnicki, filed February 29, 1996, para. 5)

With respect to the application for fees and expenses submitted by the Frankel & Abrams firm for services rendered during the course of these proceedings, the court notes that a great majority of Frankel & Abrams fees have already been paid by Profile.[8]

The Richards and O'Neil firm submits that, in keeping with its usual arrangement with Landmark, Landmark agreed to pay Richards & O'Neil normal hourly rates and to reimburse it for its out of pocket expenses incurred on Landmark's behalf. Of the $88,-715.25 in legal fees and costs billed to Landmark, Richards & O'Neil has already been paid a total of $29,845.79. (Affidavit of Fran Jacobs in Support of an Award of Counsel Fees and Costs Pursuant to 11 U.S.C. § 303(i), filed December 20, 1995, paragraphs 9.)

### 2. Non–Legal Professional Fees and Expenses:

During the damages phase of this case, Landmark retained Tucker Anthony, Incorporated ("Tucker Anthony") to provide expert advisory services and testimony with regard to valuation of the company.[9] Land-

---

professionals" rates ranged from $95/hour to $50/hour. Finally, four law clerks were also used; their rates ranged from $87/hour to $50/hour. In sum, a total of 67 people from the Kaye, Scholer firm billed their time to this case.

6. Steven Plotnicki is the president of Landmark Distributors, Inc. and 79% stockholder. He is also the president of Profile Records, Inc., and owns 100% of its stock. (Plotnicki Supplemental Affidavit, filed February 29, 1996 at para. 1.)

7. The Plotnicki Supplemental Affidavit contends that the advances are reflected as outstanding payables on the books and records of Landmark and outstanding receivables on the books and records of Profile. (Supplemental Affidavit at para. 6.)

8. At the hearing on January 30, 1995, Mr. Frankel indicated that a collective balance with respect to "all matters" was billed either to Profile or to Mr. Plotnicki, never to Landmark (Tr. 22). See also Frankel Affidavit, filed January 26, 1996, at para. 2c. A determinative factor for the court's purposes here is that, as Mr. Frankel states regarding the services rendered by his law firm, "with respect to this matter, there has never been a very significant unpaid balance due." (T. 22.)

9. Jon Tietbohl of Tucker Anthony was responsible for the preparation of an expert report on damages which was admitted into evidence, and he provided three days of deposition testimony and two days of trial testimony during the dam-

mark also retained Richard A. Eisner & Company, LLP ("Eisner") for assistance in witness preparation, particularly with respect to the expert valuation of the company. (Plotnicki Affidavit filed December 20, 1995, para. 8.) Tucker Anthony has not directly applied to the court for compensation, but has submitted its bills to the court through the affidavit of Steven Plotnicki, filed December 20, 1995. Richard A. Eisner & Co. LLP, through the affidavit of Bruce J. Rosen, CPA, a member of the firm, has submitted its application directly to the court.

### C. Objections to Fee Applications

The petitioning creditors have filed the following detailed objections to each of the three legal fee applications as well as an objection to the non-legal professional fee application of Richard A. Eisner & Company.

### 1. Objections to the Kaye Scholer Fee Application

In addition to various declarations, certifications, affidavits and appendices, petitioning creditors have submitted a 78 page memorandum, filed January 16, 1996, objecting to Landmark's application for attorneys' fees and costs. The court has reviewed the 78 page memorandum in full and summarizes the primary objections to the fee applications as contained in their objection as follows.

Petitioning creditors' first objection is that section 303(i) does not entitle Landmark to any attorneys' fees for the prosecution of its damages claim. The underlying thrust of this argument lies in the petitioning creditors' contention that only those fees and costs that were incurred in connection with the dismissal aspect of these proceedings are subject to being assessed, not those relating to the bad faith and damages aspect of these proceedings. Petitioning creditors argue in this regard, relying on cases previously cited by this court in its initial 88 page opinion, that is *In re Ross,* 135 B.R. 230 (Bankr. E.D.Pa.1991); *In re Eastern Erectors, Inc.,* 396 F.Supp. 797 (E.D.Pa.1975); *In re K.P. Enterprise,* 135 B.R. 174, 178 (Bankr.D.Me. 1992), and *In re Pierce,* 165 B.R. 252 (Bankr. N.D.Ind.1994) that an award of attorneys' fees and costs as remedies under § 303(i) are *limited* to the dismissal § 303(i)(1) phase of the case and are not available in the § 303(i)(2) bad faith/damages phase. (Petitioning Creditors' Objections, filed January 16, 1996, pp. 13–19).[10] Within this argument, petitioning creditors liken their argument under section 303(i) to that of the law of fee shifting generally and request that the court limit Landmark's maximum fee recovery to $408,904, which amount represents fees and expenses incurred in obtaining a dismissal of the involuntary petition. (Objections, pp. 19–21.)

Petitioning creditors' second objection is that even as to the dismissal phase of this case, pursuant to section 303(i)(1), the fees and expenses Landmark seeks must be reduced so as to eliminate the elements that represent work that was unnecessary or lacks substantiation under General Rule 46.[11]

ages trial as to the fair market value of the company at the time the petition was filed.

10. Petitioning Creditors' Objections filed January 16, 1996, will be identified hereafter as "Objections."

11. Rule 46 of the General Rules of the United States District Court for the District of New Jersey provides in pertinent part:

Compensation for Services Rendered and Reimbursement of *Expenses*

A. In all actions in which a counsel fee is allowed by the Court or permitted by statute, an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court, setting forth the following:

1. the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;

2. a record of the dates of services rendered;

3. a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

4. the time spent in the rendering of each of such services; and

5. the normal billing rate for each of said persons for the type of work performed.

The time spent by each individual performing services shall be totaled at the end of the affidavit. Computerized time sheets, to the

Here, petitioning creditors cite the general burden of proof that "the party seeking fees bears the burden of submitting detailed time records justifying the hours claimed to have been expended." (Objections, p. 22). In this regard, petitioning creditors cite to this court's prior decision in *In re Stanwood Devries, Inc.*, 72 B.R. 140 (Bankr.D.N.J.1987),[12] and the Third Circuit decision *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976), which cases require necessary itemization before payment of attorneys' fees.[13]

The third objection raised by petitioning creditors is that even if fees and expenses are granted for the "bad faith" or damages portion of a § 303(i) case, such an award as applied to the case *sub judice* is unreasonable. (Objections, pp. 31–38). Here, petitioning creditors object to the roughly 2.7 million dollars Landmark seeks for the damages phase of these proceedings as "reflecting a Bacchanalian display of over-lawyering, inter-lawyer conferencing, charges for unnecessary and unsuccessful work, and duplication of effort." (Objections, p. 32.) Petitioning creditors request the court exercise its discretion and substantially reduce Landmark's application.

> extent that they reflect the above, may be utilized and attached to any such affidavit showing the time units expended.
> Reimbursement for actual, not estimated, expenses may be granted if properly itemized.
> B. Applications for the allowance of counsel fees shall include an affidavit describing all fee agreements and set forth both the amount billed to the client for fees and disbursements and the amount paid.
> C. In appropriate circumstances, including but not limited to those where counsel fees are sought as sanctions in connection with discovery and other pretrial motions, the Judge or Magistrate to whom the application is directed may order that any one or more of the items enumerated in subsections 46.A and B above will not be required.

12. Parenthetically, the court notes that its decision in *In re Stanwood Devries*, 72 B.R. 140 (Bankr.D.N.J.1987) dealt with the issue of attorneys fees and the reasonableness thereof in the context of § 506(b) of the Bankruptcy Code, which section entitles a creditor with an oversecured claim to any reasonable fees (including attorney's fees), costs or charges provided under the agreement under which the claim arose.

In their fourth objection, counsel for petitioning creditors cites examples of the alleged "excesses caused by the proliferation of attorneys, paralegals, administrative and clerical personnel and others that was amassed by the Kaye, Scholer firm to pursue the damages claim." Here, petitioning creditors point out, as the court has recognized at footnote 5 of the within opinion, that during the damages aspect of this proceeding, nine partners, three counsel, nineteen associates, one summer associate, eighteen paralegals, nine managing attorney clerks, four library staff members and four law clerks, representing a deployment of 67 people, billed for time on this case. The petitioning creditors argue that Landmark and Kaye, Scholer were "duty-bound" to edit their application and cut their time entries before submitting it to petitioners and to the court.[14] (Objections, pp. 38–69.)

The fifth objection to the Landmark fee application is that many of the expenses and disbursements for which reimbursement is being sought should be disallowed as excessive, unreasonable and unsubstantiated. (Objections, pp. 70–75.) Items such as witness fees, meals, bar admission fees, and taxi service are objected to by petitioning creditors.

13. Further to this argument, petitioning creditors also object to compensation for the following specific aspects of the Kaye, Scholer application as being either unnecessary or unreasonable or both: (1) Kaye, Scholer's opposition to the stay pending appeal; (2) "unnecessary lawyers' time" during the dismissal phase of the case; (3) exorbitant rates and activities; and (4) time and rates charged for Kaye, Scholer's work performed in response to the motion for reconsideration.

14. In this regard, they point to portions of the case where Landmark was unsuccessful, as well as the fact that petitioning creditors allege that Landmark itself apparently refused to pay Kaye, Scholer its bills prior to the written decision of this court November 16, 1995, wherein the court indicated that it would be willing to entertain a fee application. Petitioning Creditors cite to the Supreme Court case of *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) and to the Third Circuit decision of *PIRG of New Jersey v. Windall*, 51 F.3d 1179, 1188 (3d Cir.1995) both of which cases, the court has reviewed.

Finally, the sixth objection relates to an initial appendix objecting to the majority of time entries submitted by Kaye, Scholer. (Initial Appendix of Petitioning Creditor Tommy Boy Music, Inc.'s Specific Objections to Landmark's Application for Kaye, Scholer's Attorneys' Fees, filed January 16, 1996.) [15] As a result of a hearing held on January 30, 1996, said initial objection has been amplified by petitioning creditors most recent appendix filed February 20, 1996. A summary of petitioning creditors' objections as contained in this "marked up" version of the original appendix along with the court's ruling as to each specific category of objection, the amount by which the objection is sustained, and the amount allowed is annexed to this opinion as appendix A.[16]

### 2. Objections to the Frankel & Abrams Fee Application

Within the above referenced initial objection to Landmark's application for attorneys' fees and costs, filed January 16, 1995, petitioning creditors objected to the Frankel & Abrams firm's request for legal fees and expenses for failure to meet the requirements of Rule 46. Specifically, petitioners contend, first, that Mr. Frankel does not describe his firm's fee arrangement with Landmark as required by Rule 46. In this regard, petitioners contend that the Frankel affidavit does not make reference to a fee arrangement with Landmark, but rather indicates that Mr. Frankel billed *Profile Records*, a related entity to the debtor, on all matters for Profile's related entities. (Objections, p. 23) (citing Frankel Affidavit, para.

12 and exhibit 2.) Thus, it is the position of petitioning creditors that Mr. Frankel's client in this matter was not Landmark, but Profile or Mr. Plotnicki personally, and accordingly no fee award should be permitted under § 303(i).

Second, the petitioners contend that Mr. Frankel has failed to describe with sufficient particularity the services rendered in this case. (Objections, p. 23). As to this objection, petitioners point to the fact that Mr. Frankel's original submissions were "handwritten and illegible, and devoid of any meaningful description" of the services provided to the extent that they could be deciphered at all. The court notes that in many cases the description of services has been redacted. Petitioners contend that this is significant because where redactions occur, the number indicating time spent on services for which compensation is being sought has not been altered to reflect "unrelated services" to Profile, Plotnicki personally, or other Profile related entities. (Objections, pp. 24–25.)

Moreover, petitioners request that the court disallow entirely the request for fees as it relates to Frankel & Abrams' participation in the *damages phase* of these proceedings for the reason that "much of the work done by each firm involved reviewing the work performed by the other." (Objection filed January 16, 1996, p. 33.) With respect to the *dismissal phase*, the petitioning creditors argue that the Frankel & Abrams firm's fees and expenses must be "drastically reduced" for a clear failure to meet Rule 46 requirements. (Objections, p. 23.) [17]

---

**15.** Initial Appendix of Petitioning Creditor Tommy Boy Music, Inc.'s Specific Objections to Landmark's Application for Kaye, Scholer's Fees, filed January 16, 1996, will be identified hereafter as "Appendix."

**16.** In preparing their revised appendix, the Petitioning Creditors were required by the court at the January 30, 1996 hearing, to select one of their ten objection categories for each time entry to which they had originally objected. Petitioning Creditors have argued that, as is reflected in their application, they often challenge a time entry for more than one of the ten specified categories of objection. The court required them to select their chief objection for each time entry to which they have multiple objections, which they have done in their February 20, 1996, sub-

mission. The court has nonetheless considered all objections raised by petitioning creditors to the time entries. (Revised Appendix of Petitioning Creditors' Specific Objections to Landmark's Application for Kaye, Scholer's Attorneys' Fees, filed February 20, 1996.)

**17.** Pursuant to the court's direction at the January 30, 1996, hearing, Sandor Frankel of the Frankel & Abrams firm submitted a supplemental affidavit filed February 20, 1996, wherein Mr. Frankel attached as exhibit 1, a typed transcription of his handwritten records submitted to the court in his original affidavit. Frankel & Abrams seeks a fee of $511,056.25. Of this amount, petitioning creditors have filed as of February 29, 1996, a summary of their most recent objections

*3.  Objections to the Richards & O'Neil Fee Application*

Also within the above referenced initial objection to Landmark's application for attorneys' fees and costs, filed January 16, 1996, petitioning creditors object to the Richards & O'Neil firm's request for fees and expenses in its entirety as defective under Rule 46.[18] Moreover, a more global objection is voiced by petitioning creditors to the fees of Fran Jacobs formerly of the Richards and O'Neil firm, because petitioning creditors contend, "the services of Ms. Jacobs and her firm were entirely unnecessary" insofar as they could have been done by one of the Kaye, Scholer Attorneys." (Objection, pp. 34–35.)  Ms. Jacobs responds to the allegations of petitioning creditors in her reply affidavit filed, January 26, 1996.[19]

*4.  Objection to the Non–Legal Professional Fee Application of Richard A. Eisner & Co.*

In addition to their objections to the legal fee applications of Kaye, Scholer, Frankel & Abrams and Richards & O'Neil, the petitioning creditors have filed an objection to the entire non-legal fee application of Richard A. Eisner & Company LLP.  Essentially, the petitioning creditors contend that Eisner functioned as an "independent auditor" to Landmark and to the extent that Landmark incurred fees and expenses relating to Eisner, such costs are subsumed in the award of damages already made by this court.  In addition, petitioning creditors contend that to the extent that Eisner purports to have provided compensable services, it has failed to specify the nature of those services with sufficient particularity.  (Objections, p. 36.)

## III.  DISCUSSION

### A.  Award Of Counsel Fees and Costs Pursuant to 11 U.S.C. § 303(i)

The court has reviewed the legal arguments of counsel for petitioning creditors as set forth in their 78 page memorandum and as heretofore summarized by this court.  The court rejects counsel for the petitioning creditors' argument that would have this court find that it lacks the authority to award Landmark attorneys' fees and costs pursuant to Landmark's attempt to prove bad faith and damages under § 303(i)(2).  This court holds, as it did in its original opinion for the reasons and caselaw cited therein, and for the additional reasons which will be specifically elaborated upon in this opinion, that upon dismissal of an involuntary petition pursuant to section 303(i), the court *may* grant judgment against petitioning creditors and in favor of the alleged debtor for costs and reasonable attorneys' fees *whether related to the alleged debtor's efforts to dismiss the petition pursuant to § 303(i)(1), or to prove bad faith or establish damages pursuant to § 303(i)(2).*[20]

In its original opinion, *In re Landmark Distributors, Inc.* 189 B.R. 290, this court set forth a detailed review of the remedies available pursuant to 11 U.S.C. § 303(i).  In *Landmark,* the court recognized that there

to the Frankel fee application.  Eight areas of objections totalling $402,060.50 have been set forth therein.

18.  The Rule 46 objection as it applies to Richards & O'Neil is that dozens of entries are impermissibly lumped together into one paragraph followed by a single time designation.  Moreover, petitioners contend that dozens of entries indicate telephone conferences without setting forth the subject matter of these conferences or their relevance to this case.  (Objection to Landmark's Application For Attorneys' Fees and Costs, filed January 16, 1996, p. 34.)

19.  In response to the objections of petitioners, Ms. Jacobs replies in pertinent part: (a) that she did not bill Landmark for a majority of the time she spent familiarizing herself with the case and that she was already familiar with much of Landmark's business; (b) that her regular hourly rate is lower than her counterparts at Kaye, Scholer; (c) that Ms. Jacobs was the only attorney who appeared on behalf of Landmark at nine of the ten depositions she attended; (d) that her time records are sufficient in detail, and (e) that her preparation of a witness to testify at a deposition, differs from Kaye, Scholer's preparation of that witness to testify at trial.

20.  In so finding, the court is aware of the case by case analysis which must be performed and makes no categorical finding regarding the ability of a court, *as a matter of law,* to compensate an alleged debtor for attorney's fees and costs incurred pursuant to the § 303(i)(2) phase of a proceeding, where an alleged debtor is *unsuccessful* in proving bad faith.

exists a split of authority regarding an award of counsel fees and costs under § 303(i). In short, one line of authority holds that a "routine" award of counsel fees under § 303(i) should be contemplated upon dismissal of an involuntary petition.[21] Other courts have found that fees and costs should not be awarded unless there is a finding of bad faith.[22]

■ In *Landmark*, 189 B.R. 290, we adopted the approach that petitioners should *generally* anticipate that an award of counsel fees and costs will be granted upon dismissal of an involuntary petition.[23] The court now addresses the second tier of that issue, which is, when a court dismisses an involuntary petition pursuant to § 303(i), finding that bad faith has been established pursuant to § 303(i)(2), and that an award of counsel fees and costs is, in the discretion of the court, justified, does the award of counsel fees and costs include the cost of litigating the bad faith and damages aspect of the proceeding under § 303(i)(2) as well as the dismissal aspect of the proceeding under § 303(i)(1)? The court holds that as applied to the facts of the case *sub judice*, it does for the following reasons.

First, the 24 day trial on bad faith and damages commenced June 7, 1995, and ended August 1, 1995. Approximately $2.5 million dollars or 87% of the total fees requested were incurred during this second phase of the case.[24] The court finds that to accept counsel for petitioning creditors' argument and deny approximately 87% of the fees requested in this case would fly in the face of legislative intent and common sense.

Second, this is truly a case of first reported impression, not only insofar as the filing of an involuntary petition in extreme bad faith caused the alleged debtor's financial demise, but because the compensatory and punitive damage award under § 303(i) totalled in the millions. Few reported decisions have dealt directly with the narrow issue petitioning creditors raise here as to whether or not an award of counsel fees and costs may be assessed for legal work performed and costs assumed during the § 303(i)(2) phase of the proceedings. In answering this question in the affirmative, this court agrees with the holding in *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (D.Colo.1984) wherein the bankruptcy court stated:

> I find nothing in the Code or case authority limiting an award to the date of dismissal. Preparation for and attendance at the hearing on attorney's fees, *costs and damages are also part of the matters which are occasioned as a result of an Involuntary Petition. As such, they are compensable under § 303(i).* (Emphasis added.)[25]

Thirdly, the court, in specifically finding with respect to its ability to compensate an

21. This line of cases includes *In re Howard Neilsen & Rush, Inc.*, 2 B.R. 451 (Bankr.M.D.Tenn. 1979); *In re Camelot*, 25 B.R. 861 (Bankr. E.D.Tenn.1982); *In re Advance Press and Litho, Inc.*, 46 B.R. 700 (D.C.Colo.1984); *In re Leach*, 102 B.R. 805 (Bankr.D.Kan.1989); *In re Anderson*, 95 B.R. 703 (Bankr.W.D.Mo.1989), and *In re K.P. Enterprise*, 135 B.R. 174 (Bankr. D.Me.1992).

22. *In re Allen Rogers and Company*, 34 B.R. 631 (Bankr.S.D.N.Y.1983); *In re Nordbrock*, 772 F.2d 397 (8th Cir.1985) and *In re West Side Community Hospital, Inc.*, 112 B.R. 243 (Bankr.N.D.Ill. 1990).

23. The Court is mindful of the fact that an award of attorneys' fees and costs under § 303(i) needs to be made on a case by case basis, taking into consideration such factors as the reasonableness of the petitioners' actions, their motivation and objectives, and the merits of their view that the petition was proper and sustainable.

24. By contrast, only $408,904 in total fees are being requested for the dismissal portion of the case.

25. But see *In re Pierce*, 165 B.R. 252 (Bankr. N.D.Ind.1994) (finding that in a case where a great deal of the work performed by counsel was not in an effort to obtain a dismissal of the involuntary petition, but was rather in an *unsuccessful* attempt to prove actual and punitive damages, attorneys' fees and costs under § 303(i)(2) should be disallowed. The court finds the *Pierce* case clearly distinguishable from the case at bar in that *Pierce* involved an *unsuccessful* attempt to prove bad faith and damages under § 303(i)(2), whereas in *Landmark*, the court found that the element of bad faith was overwhelmingly established. See also this Court's related comment at footnote 20.

alleged debtor for attorneys fees and costs incurred during the damages phase of a proceeding, is guided by the overwhelming weight of clear authority within this circuit which finds that an award of counsel fees and costs under § 303(i) is committed to the sound discretion of the court. See *In re Ross*, 135 B.R. 230, 234 (Bankr.E.D.Pa. 1991).[26]

Finally, the court finds historical precedent for its holding as respects compensation for attorneys' fees and costs under § 303(i)(2) in the case of *In re Eastern Erectors, Inc.*, 396 F.Supp. 797 (E.D.Pa.1975). In *Eastern Erectors*, a detailed history of the development of the law under § 303(i) from the Bankruptcy Act of 1898 through the present is set forth. See also *In re Ross*, 135 B.R. 230 (Bankr.E.D.Pa.1991) (citing *Eastern Erectors*, 396 F.Supp. 797 (E.D.Pa.1975)). As analyzed by the *Eastern Erectors* and *Ross* courts, under the Bankruptcy Act of 1898 involuntary petitions could be filed and contested. 135 B.R. at 235. Historically, under the 1898 Act however, when a petition was dismissed "costs of suit" but not attorney's fees could be awarded. *Id.* The only exception to this rule was by statute, specifically § 3(e) of the 1898 Act, which permitted a debtor to be awarded attorney's fees when the petitioning creditors directed the bankruptcy court to seize the debtor's property before any ruling on the propriety of the filing. *Id.*

In 1973, the Supreme Court promulgated Bankruptcy Rule 115(e) which made a substantial change in the law to reward alleged debtors costs and *"reasonable attorney's fees"* upon dismissal or withdrawal of an involuntary petition.[27] The *Ross* court cited the *Eastern Erectors* court as reading former Bankruptcy Rule 115(e) as expanding the notion of "costs of suit" to include attorneys' fees. 135 B.R. at 236. Moreover, as was noted by the district court in *Eastern Erectors*, and again by the bankruptcy court in *Ross*, prior to the codification of an award of attorneys' fees under former Bankruptcy Rule 115(e), there had always been an exception to the general rule, developed by case-law, which exception permitted the award of attorneys' fees upon a showing of bad faith by the petitioning creditors. 135 B.R. at 236 (citing *In re Eastern Erectors, Inc.*, 396 F.Supp. at 801).[28]

Against the historical background set forth above in *Eastern Erectors* and *Ross*, this court in the exercise of its discretion as applied to the facts herein, finds that the financial demise of the debtor's business caused by the filing, combined with the ample evidence of bad faith found in this case,[29] justifies an award of attorneys' fees under *both* sections 303(i)(1) and (i)(2). The court finds this interpretation of section 303(i) in accord with the legislative history of that section which provides: "In addition, if a petitioning creditor filed the petition in bad faith, the court may award the debtor *any* damages proximately caused by the filing of the petition." (H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 321–324) (emphasis added), U.S.Code

---

**26.** The holding in *In re Ross*, 135 B.R. at 234 indicates, as was recognized by this court in its original opinion, that the statute provides no framework or list of factors Congress expected courts to consider in the exercise of its discretion in awarding fees under § 303(i).

**27.** As discussed by the *Ross* court, former Bankruptcy Rule 115(e) provided:

When a case commenced by the filing of a petition against any person pursuant to Rule 104(a) or Rule 105(b) or (c) is dismissed or withdrawn, the court on reasonable notice to the petitioner or petitioners may award to the prevailing party the same costs that are allowed to a prevailing party in a civil action and reasonable counsel fees, and shall award any other sums required by the Act.

135 B.R. at 235.

**28.** The *Ross* court noted that the above referenced bad faith exception was grounded in general jurisprudential principles not unique to bankruptcy law. The principles concern the general, so called, "American Rule" under which rule the prevailing party was required to bear its own attorney's fees related to efforts to establish damages. The *Ross* Court points to the Supreme Court decision in *Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which had been decided about the same time as *Eastern Erectors*.

**29.** See *In re Landmark Distributors, Inc.*'s listing "Badges of Bad Faith" exhibited by petitioning creditors. 189 B.R. at 304.

Cong. & Admin.News 1978, pp. 5787, 6277–6281.)

### B. Reasonableness Of Fees Awarded Pursuant to 11 U.S.C. § 330(a).

Having found attorneys' fees and costs compensable under §§ 303(i)(1) and (i)(2), the court now turns its attention to the appropriate *amount* of fees to be awarded. This determination involves the Court's analysis and application of 11 U.S.C. § 330(a).

To begin its analysis of § 330(a), the court will first set forth the proper legal standard, as established by the Third Circuit, which is to be applied in determining a reasonable compensation for actual, necessary services rendered in this case by designated eligible fee award recipients (professionals and paraprofessionals) and for reimbursement for actual, necessary expenses.

■ The Third Circuit has stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir.1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The court should exclude hours that it finds are not reasonably expended. *Id.* "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.*

■ Initially, it must be stated that the party seeking the fees maintains the burden of proving that its request is reasonable. *Rode*, 892 F.2d at 1183; *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The ultimate standard is always whether the final fee award is in fact an award of a reasonable fee in the circumstances of the particular case. *In re Public Service of New Hampshire*, 86 B.R. 7, 11 (Bankr.D.N.H.1988).

■ After it makes a determination of hours reasonably expended, the court must next examine whether the requested hourly rate is reasonable. *Id.* Generally, the Third Circuit in *Rode* noted that a "reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community" (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the "lodestar." *Id;* see also *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The lodestar is presumed to be the reasonable fee. *Id.* (Citing *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548); see also *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir.1976) (en banc).)

The Third Circuit in the recent comprehensive opinion *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir.1994) set forth the proper method for calculating the reasonableness of the rate of compensation under Section 330(a). Although in *Busy Beaver* the Third Circuit addressed the issue of whether or not certain paralegal expenses were compensable under § 330, other courts, in varying professional and paraprofessional contexts have cited the *Busy Beaver* analysis as controlling. See *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 258 (3rd Cir.1995) (applying *Busy Beaver* standard to out-of-state accounting firm's fee application for services provided to debtor during chapter 11 proceeding); *Dubin Paper Company*, 169 B.R. 115, 120–121 (Bankr. E.D.Pa.1994) (Chief Judge Scholl cites *Busy Beaver* as requiring that the bankruptcy court apply the multi-step "market approach" in ruling on interim fee awards to attorneys for debtor in chapter 11 cases); *In re Jefsaba, Inc.*, 172 B.R. 786, 797 (Bankr.E.D.Pa. 1994) (using *Busy Beaver* as a guide for determining attorney's fees and accountant's fees). Of the factors [30] enumerated in the

---

**30.** The following *twelve factors* were enumerated by the court in the leading case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974):

    1. the time and labor required;

    2. the novelty and difficulty of the questions presented by the case;
    3. the skill requisite to perform the legal service properly;
    4. the preclusion of other employment by the attorney due to acceptance of a case;

statute as bearing on the reasonableness of the compensation, that is the: (i) nature, (ii) extent, and (iii) value of the services, and (iv) the cost of comparable services, the Third Circuit in *Busy Beaver* stated:

> We think that although each factor enumerated by § 330(a) retains independent significance, *the cost of comparable services factor has an overarching role to act as a guide* to the value of the services rendered given their nature and extent. In combination, these four factors—*with the principal emphasis being on the cost of comparable services (market rates)*—essentially provide the basis for computing the "reasonable hourly rate" used in the "lodestar" calculations familiar to fund-in-court cases and statutory fee-shifting provisions.

19 F.3d at 849 (citing the Third Circuit Task Force, court awarded Attorney's Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985)). (Emphasis added.)

■ In a significant footnote, the Third Circuit in *Busy Beaver,* stated that with respect to the enumerated factors and their application to the lodestar method:

> The most familiar formula courts in this circuit use to calculate attorneys' fees is undoubtedly the "lodestar" approach, an approach with its roots in common fund cases and fee-shifting statutes. Under the lodestar analysis, a court first establishes a reasonable hourly rate (corresponding to the value of the services and the cost of comparable services in § 330(a)(1) for each set of compensable services corresponding to the nature of the services in § 330(a)(1), and then multiplies each rate by the reasonable number of hours of compensable work included in each respective set (cor-

responding to the time and extent of the services in § 330(a)(1).

19 F.3d at 849, fn. 21.[31]  Calculation of the lodestar involves a two-step process. First, as discussed at length above, the court must determine the reasonable number of hours expended multiplied by the appropriate hourly billing rate. Second, once the appropriate lodestar amount is established, the next step is a determination as to whether or not an enhancement or reduction of the fee is warranted.

In determining the degree of specificity required of the above review, the holding of *Busy Beaver* is instructive. The Third Circuit held in that case,

> that we do not intend that a district (or bankruptcy) court, in setting an attorney('s) fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It ... is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief. 19 F.3d at 844 (citing *Lindy Bros. Builders, Inc.,* 540 F.2d at 116). Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled.

19 F.3d at 844.

Also, in the recent case of *Zolfo, Cooper & Co. v. Sunbeam–Oster Company, Inc.,* 50 F.3d 253 (3d Cir.1995) the Third Circuit relied on *Busy Beaver*'s interpretation of § 330 and the award of reasonable compensation. In *Zolfo,* the court stated that under § 330 the court is imbued with the discretionary authority to review fee applications. Again, *Zolfo* emphasized that section 330

---

5.  the customary fee for similar work in the community;
6.  whether the fee is fixed or contingent;
7.  time pressures imposed by the client or the circumstances;
8.  the amount involved and results obtained as a result of the attorneys' services;
9.  the experience, reputation and ability of the attorneys;
10.  the "undesirability" of the case;
11.  the nature and length of the professional relationship with the client; and
12.  awards in similar cases.

The factors set forth in *Johnson* were made applicable to bankruptcy cases by the Court of Appeals for the Fifth Circuit in *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

31.  The § 330(a)(3)(A) factor, "the time spent on such services" is a "sibling of the lodestar approach's reasonable hours component." *Id.* at 849.

presents a "market-driven approach in which the cost of comparable services is the most important of the listed factors, the others being the nature, extent, and value of the services. 50 F.3d at 258. In quoting *Busy Beaver*, the court stated "We disapprove of any approach that allows a court confronted with undisputed, credible contrary evidence of market practices in the record to rely solely on its own judgment ... on the other hand, we also noted that reliance on the market is tempered because the court will, in practical terms act as a surrogate for the estate, reviewing the fee application much as a sophisticated non-bankruptcy client would review a professional bill. Moreover, in *Busy Beaver*, as quoted by *Zolfo*, the court observed that "certainly a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." 50 F.3d at 258. Finally, it was held that where evidence proves a market rate that directly contradicts the court's judgment, the market rate must take precedence. 50 F.3d at 258 (citing 19 F.3d at 854).

## IV. CONCLUSION

### A. CALCULATION OF THE LODESTAR

■ Giving due regard to the caselaw cited above, the court must review the Landmark fee application to determine whether the number of hours expended is reasonable in light of the work Kaye, Scholer claims to have performed. See *In re Breeden*, 180 B.R. 802, 809 (Bankr.N.D.W.Va.1995). In its application, Kaye, Scholer submits that it billed for a total of 11,358.30 hours of work. In analyzing those hours, the court notes that of the ten objection categories cited by

petitioning creditors, five deal with the specific element of the reasonableness of time expended.[32]

■ After reviewing the Kaye, Scholer time records and the objections cited above with regard to the reasonableness of the amount of time expended, the next step the court must undertake in computing the lodestar is a decision regarding reasonable hourly rates to be charged by Kaye, Scholer. *In re Breeden*, 180 B.R. at 810. This determination is made by compensating attorneys and other professionals at the "prevailing market rates in the relevant community". *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). In the very recent Third Circuit case of *Zolfo*, 50 F.3d 253, the court cited the "comprehensive opinion" of *Busy Beaver*, interpreting section 330 of the Bankruptcy Code. The *Zolfo* court stated that "if the marketplace naturally establishes a price for a service, then we believe that it is logical to assume that this is (the proper figure)." 50 F.3d at 258 (citing *In re Patronek*, 121 B.R. at 731).

With respect to the value of an attorney's time in particular, the *Zolfo* court looked to the prior Third Circuit opinion in *In re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3rd Cir.1984), in which the court had explained that "the value of an attorney's time generally is reflected in his normal billing rate." 50 F.3d at 259 (citing *In re Fine Paper Antitrust Litigation*, 751 F.2d at 583).[33] Moreover, in cases like this, where bankruptcy counsel has a large national practice, the Third Circuit has cited approvingly to cases in which out-of-state firms, where justified, appropriately received higher rates

---

**32.** Specifically, objection categories involve: (a) an amount of time expended with regard to a described activity which the petitioning creditors feel was not necessary or reasonable or was excessive (category 2); (b) actual time spent on a described activity that is allegedly not adequately particularized as required by Rule 46 (category 6); (c) charges for time billed for temporary attorneys which is allegedly higher than that paid for the temporary attorney by the firm itself (category 8); (d) relevance of time entries (category 9); and (e) allegations that it is unclear

whether certain time entries include travel time which they contend should be billed only at a nominal rate (objection 10). The court in making its adjustments herein sustained the objections as to time in categories 2, 6 and 10. See Appendix "A" of this Opinion.

**33.** The *Zolfo* court also noted that in *In re Fine Paper Antitrust Litigation*, the court quoted another Third Circuit opinion, *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir.1973).

than the local rate in difficult cases. 50 F.3d at 259 (citing 19 F.3d at 856).

In this case, the fees charged by Kaye, Scholer reflect its "normal hourly rates." The court notes both the complexity of the case and the fact that in *Zolfo*, the Third Circuit specifically rejected a bankruptcy court's analysis which applied an "unduly parochial" approach to setting an hourly rate "in this age of national and regional law firms working on larger more complex bankruptcy cases of more than local import." 50 F.3d at 260 (citing *In re Robertson Co.*, 123 B.R. 616, 619 (Bankr.D.N.D.1990)). Since the Third Circuit has stated that "[t]he baseline rule is for firms to receive their customary rates," 50 F.3d at 259, and the court accepts Mr. Edelman's affidavit that "the hourly rates charged by Kaye, Scholer in this matter reflect the generally prevailing billing rates of New York law firms which have the resources to handle a case of this magnitude" (Edelman affidavit at p. 18, para. 40), the court will accept these figures in conducting its analysis.

Finally, in making adjustments to the lodestar, in addition to objections dealing with the reasonableness of time expended and hourly rates as discussed above, the court has made further reductions for *inter alia*, unnecessary work performed during the course of these proceedings, ministerial work performed by overly qualified personnel, interoffice conferencing and meetings and travel time. The specific adjustments made by the court are as follows.[34]

### B. AWARD OF FEES

*1. Award of Legal Fees and Expenses— Kaye Scholer Fee Application*

The court has reviewed objection category 1 and is sustaining the objection in the

amount of $93,000 for those items listed in category 1. As to category 2, the court sustains the objection in the amount of $86,000. In category 3, the objection is sustained in the amount of $5,000. As to category 4, the objection is sustained in the amount of $2,000. No deduction has been made for category 5 objections. As to category 6, the objection is sustained in the amount of $25,000. As to category 7, the objection is sustained in the amount of $94,000. No deductions have been made for category 8 and 9 objections. Finally, as to category 10, the objection is sustained in the amount of $2,000. As a result of the foregoing, the original $2,239,321 in legal fees applied for is hereby reduced by $307,000 for a total allowed legal fee to Kaye Scholer of $1,932,321.[35]

With respect to the $147,665.75 in expenses for which Kaye Scholer seeks reimbursement, the court is disallowing $539.50 for "In House Coffee Service"; $1,199.45 for "Conference Meals" and $5,706.91 for "Legal Staff Working Meals." The court finds that it is not the responsibility of the petitioning creditors to pay for meals. In addition, on page 9 of the Disbursement Summary, the court is disallowing Attorneys' Admission Fees to the Third Circuit for a total of $40 as well as Hotel Expenses for New York partners in the amount of $1,101.50. With respect to photocopying, the court is allowing $.10 per page, thereby allowing in full the in-house photocopying charges of Kaye, Scholer in the amount of $43,347.60. On the three occasions Kaye, Scholer used outside services for photocopying, the court is reducing the photocopying award from the $2,488.83 requested to

---

**34.** In making said further adjustments, the court looked to the 12 enumerated factors as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) which are provided at footnote 30 of this opinion.

**35.** With respect to the fees sought by paraprofessionals, the court refers to *Busy Beaver*, 19 F.3d at 848, wherein the Third Circuit found that the type of service performed by a paralegal, including whether it is clerical, affects the *rate* of compensation and not compensability vel non. In addition, the *Busy Beaver* Court found that in

reviewing a fee application for paralegal services, the bankruptcy court should not look to see whether each particular service undertaken by a paralegal is clerical or professional by nature, but for whether nonbankruptcy attorneys typically charge and collect from their clients for that particular service when performed by members of that profession, and rates charged and collected. 19 F.3d at 849. The court has reviewed the Kaye, Scholer fee application as respects requested paralegal fees and has included the above considerations in its adjustments.

$1,226.95 thereby reflecting the $.10 per page limit. (Letter from Herbert S. Edelman to the Court dated February 8, 1996). As for word processing costs, the court accepts Kaye, Scholer's representation that it bills for same to both bankruptcy and non bankruptcy clients and is therefore allowing said costs. (Edelman Letter dated February 8, 1996). As a result of the foregoing, the original $147,665.75 in expenses applied for is hereby reduced by $9,849.24 for a total of $137,816.51 in allowed expenses. Reimbursement is being granted in full in the amount of $40,947.12 for court reporting and trial exhibit preparation.

### 2. Award of Legal Fees and Expenses— Frankel & Abrams Fee Application.

■ The court has reviewed both the general and specific objections to the Frankel & Abrams Fee Application. In general, the court finds that both with respect to the dismissal and damages phase of these proceedings, Profile and Mr. Plotnicki individually were the Frankel & Abrams firm's primary clients. The court notes in this regard that, by Mr Frankel's own admission, the great majority of the $511,056.25 in legal fees and $469 in expenses sought by Frankel & Abrams has already been paid to that firm by Profile.[36] Moreover, in assessing the "reasonableness" of the fees requested by Landmark, the court finds that the deployment of no less than 67 members of the Kaye, Scholer staff was more than sufficient to handle the complexity of the matters involved. In short, while the court notes that Mr. Frankel, longtime general counsel to Profile and its affiliates, had every right to appear as co-counsel [37] in this case, the role played by the firm was largely that of an "overseer" for Profile and Mr. Plotnicki personally. The court finds that the expense of their performance as an overseer to the non-debtor Profile should not be borne by Petitioning Creditors, therefore the request for

compensation and costs submitted by Frankel & Abrams will be denied.[38]

### 3. Award of Legal Fees and Expenses— Richards & O'Neil Fee Application

■ The court finds the rationale employed above with respect to the sufficiency of the Kaye, Scholer firm's representation of Landmark and the disallowance of the Frankel & Abrams' fee application equally applicable to the request for compensation submitted by the Richards & O'Neil firm as co-counsel. Therefore, the fee application of Richards & O'Neil is also denied in its entirety.

### 4. Award of Non–Legal Professional Fees and Expenses for Accountants

■ With respect to an award of non-legal professional fees for Tucker Anthony and Richard A. Eisner and Co., petitioning creditors contend that no application has been made for, nor has authorization been provided by the court for, an award of accountant's fees. (Objections, p. 36.) The court rejects petitioning creditors' argument in this regard. This court, in its damages decision, contemplated that an application for such an award would be forthcoming by Landmark for the services provided by Tucker Anthony and Eisner. The court notes that the written appraisal and valuation testimony provided by Jon Tietbohl was a primary basis upon which the court reached its decision as to the amount of compensatory damages to award in this case.

From its review of the record, the court does not find any substantial objection to the fee application of Landmark as respects monies already paid by it to Tucker Anthony and Co. for the advisory services and testimony rendered by Tucker Anthony in this case. The only objection voiced appears on page 70 of the Objections which states that,

---

**36.** As indicated earlier herein by the Court, all of the invoices were sent to Profile Records.

**37.** The court notes the Frankel & Abrams firm's daily participation in the trials and its handling of direct and cross examination of certain witnesses.

**38.** Having found that the request for compensation of fees by Frankel & Abrams should be disallowed in its entirety based upon the general finding that Landmark was not the firm's primary client, the court need not address the specific objections to the Frankel & Abrams fee application as not complying with the requirements of General District Court Rule 46.

while petitioning creditors have no objection in the abstract to the expenses incurred in Landmark's retention of Tucker Anthony, petitioning creditors have been provided with no documentation other than the retainer letter to justify the $44,500.00 sought. Without such itemization, petitioning creditors request that this court substantially deny the Tucker Anthony expense for failure to comply with Rule 46. While Tucker Anthony has not directly applied to the court for compensation, the court has reviewed Tucker Anthony's bills submitted through the affidavit of Steven Plotnicki and has approved the Tucker Anthony request in full. (Plotnicki affidavit, filed December 20, 1995, exhibit "A".)

Regarding petitioning creditors' attempt to place the services rendered by Richard Eisner and Co. in the category of "percipient" witness and thereby deprive that firm of its entitlement to fees as an expert in this case, the court finds, based upon the affidavit of Bruce J. Rosen, C.P.A. of Eisner, filed December 20, 1995, that the debtor retained the services of Eisner for the purposes of assistance in witness preparation for the damage phase of the trial, particularly with respect to the issue of valuation. Pursuant to section 330(a)(1), the court finds the compensation sought reasonable and therefore the Eisner application should be allowed in full.

For all of the above reasons the court awards the following:

| Applicant: | Fees: | Costs: |
|---|---|---|
| Kaye, Scholer | $1,932,321.00 | $137,816.51 |
| Frankel & Abrams | $ 0 | $ 0 |
| Richards & O'Neill | $ 0 | $ 0 |
| Tucker, Anthony Inc. | $ 44,500.00 | $ 4,933.70 |
| Richard A. Eisner | $ 29,330.00 | $ 3,510.00 |
| Court Reporting | | $ 30,298.00 |
| Trial Exhibits | | $ 10,649.12 |
| | $2,006,151.00 | $187,207.33 |

## APPENDIX A

| Category | Nature of Objection | Amount Objected to by Petitioning Creditors | Amount by Which Objection is Sustained | Amount Allowed |
|---|---|---|---|---|
| 1 | The activity listed was not necessary to or reasonably incurred in the alleged debtor's defense of the involuntary petition and/or the prosecution of its bad faith claim | $ 430,377.80 | $ 93,000.00 | $ 337,377.80 |
| 2 | The amount of time expended with regard to the described activity was not necessary or reasonable or was excessive. | $ 429,348.66 | $ 86,000.00 | $ 343,348.66 |
| 3 | The abilities and experience of the billing person were not reasonable or necessary to the task or item billed. | $ 115,175.11 | $ 5,000.00 | $ 110,175.11 |
| 4 | The amount charged reflects non-attorney time or a law firm expense that is more properly or appropriately included in overhead, and thus should not be the subject of a separate charge. | $ 49,768.88 | $ 2,000.00 | $ 47,768.88 |
| 5 | The charge has not been described or delineated with sufficient particularity, as required by Rule 46 of the General Rules of the United States District Court for the District of New Jersey. | $ 60,035.24 | —0— | $ 60,035.24 |
| 6 | The actual time spent on each described activity has not been adequately particularized, as required by General Rule 46. | $ 306,370.35 | $ 25,000.00 | $ 281,370.35 |
| 7 | The charge reflects an excessive or unnecessary internal law | $ 478,947.10 | $ 94,000.00 | $ 384,947.10 |

| | | | | |
|---|---|---|---|---|
| | firm or other inter-lawyer communication. | | | |
| 8 | The charge reflects an improper effort by the law firm to bill for temporary attorney time at a rate higher than that paid for the temporary attorney by the firm itself | $ 2,477.80 | —0— | $ 2,477.80 |
| 9 | The relevance of the time entry is not clear. | $ 2,700.63 | —0— | $ 2,700.63 |
| 10 | It is unclear whether the entry includes time spent traveling. Travel time should not be billed at all or, if so, should be billed only at nominal rate. | $ 8,460.00 | $ 2,000.00 | $ 6,460.00 |
| | Totals: | $1,883,661.57 | $307,000.00 | $1,576,661.57* |

Footnote to Appendix A:

* Because not all the fees applied for were objected to by petitioning creditors, the total amount of allowed fees exceeds that which is reflected in this appendix. As set forth on page 37 of the within opinion, subtracting $307,000 as the total amount of fees disallowed to Kaye, Scholer from the original $2,239,321.00 requested, the court allows legal fees in the total amount of $1,932,321.00.

---

### ORDER AWARDING COMPENSATORY AND PUNITIVE DAMAGES AND ATTORNEYS FEES AND COSTS

This case came before the court pursuant to 11 United States Code Section 303(i) wherein alleged debtor, Landmark Distributors, Inc., sought to have the court grant judgment against petitioning creditors for reasonable attorneys fees, damages proximately caused by the filing of an involuntary bankruptcy petition, and punitive damages. The court issued a written opinion on November 16, 1995, in which it awarded judgment in favor of Landmark Distributors, Inc. and against petitioning creditors, Tommy Boy Music, Inc., Select Records and Max Entertainment, Inc., for reasonable costs and attorneys fees, the amount thereof to be subsequently fixed by the court; in addition, the court awarded Landmark Distributors, Inc. judgment against petitioning creditors Tommy Boy Music, and Select Records, for compensatory damages in the amount of $3.2 million, and judgment for punitive damages in the amount of $500,000 against Tommy Boy, Inc.

The court has reviewed the fee applications submitted by counsel for Landmark Distributors, Inc., the opposition and reply, and has rendered a written decision this date on the reasonableness of said fee applications. Both the November 16, 1995, and the April 2, 1996, opinions are incorporated herein by reference.

IT IS, on this 2nd day of April, 1996;

ORDERED that:

(1) judgment is entered in favor of Landmark Distributors, Inc., and against Petitioning Creditors Tommy Boy Music, Inc. and Select Records for compensatory damages in the amount of $3.2 million;

(2) judgment is entered in favor of Landmark Distributors, Inc. and against Petitioning Creditor Tommy Boy Music, Inc. for punitive damages in the amount of $500,000;

(3) judgment is entered in favor Landmark Distributors, Inc., and against Petitioning Creditors Tommy Boy Music, Inc., Select Records and Max Entertainment, Inc. for reasonable costs and attorneys fees as follows:

| Applicant: | Fees: | Costs: |
|---|---|---|
| Kaye, Scholer | $1,932,321.00 | $137,816.51 |
| Frankel & Abrams | $ —0— | $ —0— |
| Richards & O'Neill | $ —0— | $ —0— |
| Tucker, Anthony Inc. | $ 44,500.00 | $ 4,933.70 |
| Richard A. Eisner | $ 29,330.00 | $ 3,510.00 |
| Court Reporting | | $ 30,298.00 |
| Trial Exhibits | | $ 10,649.12 |
| | $2,006,151.00 | $187,207.33 |